United States Court of Appeals,

Fifth Circuit.

No. 92-2627

Summary Calendar.

Joseph RANKIN, Plaintiff-Appellee,

v.

John KLEVENHAGEN, et al., Defendants,

G.D. Pinkins, Defendant-Appellant.

Oct. 21, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before DAVIS, JONES and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

This is an interlocutory appeal from the denial of Appellant's motion for summary judgment claiming qualified immunity. Joseph Rankin (Rankin) alleges that Appellant used excessive force on him while he was an inmate in the Harris County Jail. Gregory Pinkins (Pinkins), a Deputy Sheriff in Harris County, Texas, asserts that he is entitled to qualified immunity from Appellee's § 1983 suit. We hold that the district court erred in applying *Hudson v. McMillian*[1] to the second prong of the bifurcated inquiry into Pinkins' qualified immunity defense, and remand for further proceedings.

I.

Rankin was incarcerated at the Harris County Jail in 1986. He was placed in a large holding cell with 150-200 other inmates awaiting court appearances. A group of female prisoners passed in front of the holding cell, and the inmates therein began shouting and otherwise creating a disturbance. Deputy Pinkins attempted to restore order to the holding area, so that the processing of the inmates could continue.

Rankin alleges that Pinkins singled him out from the others in the holding cell and forcibly removed him. The ensuing events are disputed; however, Rankin contends that Pinkins placed him

---

[1] --- U.S. ----, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), *rev'g* 929 F.2d 1014 (5th Cir.1990).

in a "compliance hold," slammed him against a wall and the jail's floor, handcuffed him and "stomped" on his back and legs.  Rankin suffered injuries to his knee, throat and a finger.

Appellee filed this 42 U.S.C. § 1983 suit.  Appellant moved for summary judgment, arguing that (1) he did not apply excessive force to Appellee;  and, (2) he was entitled to qualified immunity from suit.

The court initially indicated that it would grant Pinkins' motion, but delayed ruling until Appellee responded.  Rankin, in his response, moved to stay the proceedings pending the Supreme Court's decision in *Hudson v. McMillian,* --- U.S. ----, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), *rev'g* 929 F.2d 1014 (5th Cir.1990).[2]  The district court agreed, and stayed the proceedings.  After the Supreme Court decided *Hudson,* Pinkins renewed his motion for summary judgment.  The court denied it and Pinkins timely appealed.  *See Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2814, 2815, 86 L.Ed.2d 411 (1985) (rulings which deny qualified immunity are appealable under the "collateral order" exception to 28 U.S.C. § 1291).

When Pinkins filed his petition for review, he also requested that the district court stay the § 1983 action pending this appeal.  The district court granted this motion.  In the stay order the court explained that it had denied Pinkins' summary judgment request based on the standards announced in *Hudson.*  R. 901.  Pinkins now appeals, arguing that the court should have evaluated his defense under the law in place at the time of the incident instead of retroactively applying *Hudson.*

## II.

In assessing a claim of qualified immunity, we engage in a bifurcated analysis.  *See Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992).  First, we determine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right."  *Siegert v. Gilley,* --- U.S. ----, ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  If so, we then decide if the defendant's conduct was

---

[2]In *Hudson,* the Supreme Court held that the use of excessive force against a prisoner may rise to the level of an Eighth Amendment violation even though the inmate does not suffer a serious injury.  *Hudson v. McMillian,* --- U.S. ----, ----, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).  This decision overturned prior Fifth Circuit precedent in the area of Eighth Amendment excessive force claims, which had required an inmate to plead and prove that he suffered a "significant injury" at the hands of prison personnel.  *See, e.g. Huguet v. Barnett,* 900 F.2d 838, 841 (5th Cir.1990).

objectively reasonable, because " "[e]ven if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.' " *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993) (quoting *Salas,* 980 F.2d at 310). Because this matter was resolved by summary judgment, "[o]ur review is plenary accepting the facts in the light most favorable to the nonmoving party." *Salas,* 980 F.2d at 304.

Appellee has alleged that Pinkins used excessive force against him, thereby violating his Eighth and Fourteenth Amendment rights. R. 7. At the outset, we note that Appellee, at the time of his incarceration, had not yet been convicted of the crime with which he was charged (forgery). Generally, this would require us to review his claim as one alleging a Fourteenth Amendment due process violation, in light of his status as a pretrial detainee. *See, e.g. Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979) (pretrial conditions or restrictions that amount to "punishment" implicate due process concerns). However, at the time of his arrest, Rankin was on parole from the Texas Department of Corrections, where he was serving his sentence for an earlier burglary conviction. *See* R. 108-09 (Rankin deposition). This would seem to warrant review under the Eighth Amendment's prohibition against cruel and unusual punishment. *See, e.g. Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986) (Eighth Amendment is primary source of protection against the official use of force on convicted prisoners).

In *Valencia v. Wiggins,* 981 F.2d 1440 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993), we were confronted with a an excessive force claim brought by a pretrial detainee who had been confined for three weeks. The plaintiff-detainee was involved in a small-scale disturbance, and alleged that a guard used excessive force on him in attempting to squelch the ruckus. The *Valencia* court, in a thorough and well-reasoned opinion, concluded:

> [W]hen a court is called upon to examine the amount of force used on a pretrial detainee for the purpose of institutional security, the appropriate analysis is that announced in *Whitley* and *Hudson:* whether the measure taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."

*Valencia,* 981 F.2d at 1446 (quoting *Hudson v. McMillian,* --- U.S. ----, ----, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992)).

Both *Whitley* and *Hudson* are Eighth Amendment cases involving convicted prisoners; however, the *Valencia* court concluded that these cases provided the proper framework for analyzing a pretrial detainee's excessive force claim, when the force was applied in an effort to preserve institutional security:  "[I]t is impractical to draw a line between convicted prisoners and pretrial detainees for the purpose of maintaining jail security."  981 F.2d at 1446.  The court found further guidance from *Hudson* 's intimation "that many of [the Supreme Court's] concerns in *Whitley* were not limited to Eighth Amendment claims but "arise *whenever* guards use force to keep order.' " *Valencia,* 981 F.2d at 1446 (emphasis in original) (quoting *Hudson,* --- U.S. at ----, 112 S.Ct. at 996)).

The instant case fits squarely into the holding of *Valencia.*  We are reviewing a detainee's claim stemming from force applied when a jailer attempted to restore institutional order.  Even if our review hinged upon Appellee's parolee status, the same standards would govern our analysis. Appellee had been detained for approximately two weeks when the incident with Deputy Pinkins occurred.  Additionally, at the time of the incident Pinkins was attempting to restore order to the holding cell area.  We conclude that the Eighth Amendment is the proper benchmark against which Rankin's claim should be analyzed.

Having identified what constitutional criteria govern Appellee's claim, we look to see if he has alleged a constitutional violation.  We must utilize currently applicable constitutional standards to make this assessment.  *See Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993) (applying Fourth Amendment excessive force standards announced in *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc), to incident which occurred in 1987); *Hudson v. McMillian,* 929 F.2d 1014, 1015 (5th Cir.1990) (applying Eighth Amendment excessive force standards announced in *Huguet v. Barnett,* 900 F.2d 838 (5th Cir.1990), to incident which occurred in 1983), *rev'd* --- U.S. ----, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

Pinkins urges that the district court should have applied *Shillingford v. Holmes*[3] in analyzing

---

[3]634 F.2d 263 (5th Cir.1981).  *Shillingford* applied the due process provision of the Fourteenth Amendment to an excessive force claim.  *Id.* at 264.  The court held that a valid claim for excessive force required showing (1) a severe injury, which was (2) "grossly disproportionate"

whether or not Appellee's complaint sufficiently stated a constitutional violation. *Shillingford* articulated this court's standard governing excessive force claims at the time Pinkins allegedly injured Rankin. *See Valencia,* 981 F.2d at 1443.

Appellant's contention that the district court erred in its retroactive application of *Hudson* to the first prong of his qualified immunity defense is without merit: "Our conclusion that *Whitley* and *Hudson* provide the correct standard for excessive force suits brought by pretrial detainees means that this Circuit's test in *Shillingford* has no continuing force." *Valencia,* 981 F.2d at 1447; *accord Shabazz v. Lynaugh,* 974 F.2d 597, 598 (5th Cir.1992) (remanding dismissal of prisoner's excessive force claim for reconsideration in light of *Hudson* ); *Tijerina v. Plentl,* 958 F.2d 133, 138 (5th Cir.1992) (vacating judgment entered after jury trial and remanding case after *Hudson* ). Consequently, to state an Eighth Amendment excessive force claim, a prisoner (or pretrial detainee engaged in disrupting institutional security), must show that force was applied not "in a good faith effort to maintain or restore discipline," but rather that the force complained of was administered "maliciously and sadistically to cause harm." *Hudson,* --- U.S. at ----, 112 S.Ct. at 999 (citing *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); *see Valencia* 981 F.2d at 1446.

In this case, the district court concluded that the summary judgment evidence was "at least sufficient to raise genuine issues of material fact on each of the post-*Hudson* elements essential to Rankin's claim." R. 904. The court analyzed Appellee's claim using the *Johnson v. Morel*[4] factors, sans the requirement that the injury be "significant." *Id.*[5] These factors roughly parallel those we

___

in relation to the need for action, and (3) was inspired by malice. *Id.* at 265; *see Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993). We note that the Fourteenth Amendment no longer provides the standard in such cases. In *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), the Supreme Court held that all claims involving the use of excessive force against free citizens are to be analyzed under the Fourth Amendment.

[4]876 F.2d 477 (5th Cir.1989) (en banc).

[5]The district court concluded that Rankin's summary judgment evidence at least raised an issue of material fact on each of the following elements:

1) the use of force was clearly excessive to the need;

announced in *Hudson v. McMillian,* 962 F.2d 522, 523 (5th Cir.1992), after that case was remanded from the Supreme Court.[6]  Because of the plenary nature of our review, we turn to an evaluation of the *Hudson* factors, "accepting the facts in the light most favorable to the nonmoving party."  *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992).

*Hudson* removed the "serious" or "significant" injury requirement we previously held necessary to show an Eighth Amendment violation.  "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  *Hudson,* --- U.S. at ----, 112 S.Ct. at 999.  Rankin claims that Pinkins' actions either caused or aggravated a knee injury, which ultimately led to corrective surgery.  Appellee also sought treatment for an injury to his throat, and complains that his finger was injured in the melee.  In cases post-*Hudson,* "[c]ertainly *some* injury is still required."  *Spann,* 987 F.2d at 1115 n. 7.  Appellee's injuries suffice to meet this element.

Appellant asserts that action was needed to restore order to the holding cell area.  In his deposition testimony, Pinkins stated that he ordered Rankin from the holding cell in order to squelch the disruptive activity.  R. 523.  He further testified that Appellee's hostile motions necessitated a forceful response.  Needless to say, Appellee paints a different picture of this encounter, and offers evidence in support of his contentions.  This factor, along with *Hudson* 's third and fourth

---

2) the excessive force was objectively unreasonable;  and,

3) the action constituted an unnecessary and wanton infliction of pain.

R. 904.

[6]In assessing whether force was applied in a "good faith effort to maintain or restore discipline," and not "maliciously and sadistically" to cause harm, the *Hudson* court, on remand, cited several factors which are relevant to this inquiry:

> (1) the extent of the injury suffered;  (2) the need for the application of force;  (3) the relationship between the need and the amount of force used;  (4) the threat reasonably perceived by the responsible officials;  and, (5) any efforts made to temper the severity of the forceful response.

*Hudson v. McMillian,* 962 F.2d 522, 523 (5th Cir.1992) (citing *Hudson,* --- U.S. at ----, 112 S.Ct. at 999).  This is not an exhaustive listing of pertinent considerations:  "The degree of force exerted and the extent of physical injury inflicted that together amount to a constitutional deprivation must, of course, be determined by the facts of a given case." *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981).

components (the relationship between the need and force used, and the threat reasonably perceived by Pinkins), are dependent on a fact-sensitive inquiry and credibility determinations. Because we must draw factual inferences in the nonmovant's favor, we agree with the district court that summary judgment is not a proper vehicle for the resolution of these disputed issues. As for the final *Hudson* factor, another officer did order Rankin removed from Pinkins' control, after he observed Pinkins shove Rankin—who by this time was handcuffed—into the cement wall a second time. While this did "temper the severity of a forceful response," it tends to indicate that, initially at least, unnecessary force may have been used against Appellee.

Again, because this matter is before us following denial of summary judgment, we make no intimations regarding the correctness *vel non* of either party's factual assertions. Reviewing these allegations in the light most favorable to the nonmoving party, it is clear that, under the controlling standards announced in *Hudson,* Appellee has stated a claim for violation of a constitutional right. *See Spann,* 987 F.2d at 1115; *Shabazz,* 974 F.2d at 598; *Hudson,* 962 F.2d at 523.

Qualified immunity shields government officials performing discretionary functions from civil liability, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see Valencia,* 981 F.2d at 1447. In evaluating this second prong of the bifurcated inquiry into qualified immunity, we part from the subjective intent standard of *Hudson* (*i.e.* was the force applied maliciously or sadistically to cause harm). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Mouille v. City of Live Oak,* 918 F.2d 548, 551 (5th Cir.1990) (citing *Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038).

When evaluating whether a plaintiff stated a constitutional violation, we looked to currently applicable constitutional standards. *See Spann,* 987 F.2d at 1115; *Hudson v. McMillian,* 929 F.2d 1014, 1015 (5th Cir.1990), *rev'd* --- U.S. ----, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). However, "[t]he objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question." *Mouille,* 918 F.2d at 551 (citing *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *see Spann,* 987 F.2d at 1115; *Valencia,* 981 F.2d at 1448.

In July 1986, our standard for Eighth Amendment excessive force claims was *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). *See Valencia,* 981 F.2d at 1448. In *Shillingford,* we held that to maintain an excessive force claim a plaintiff had to prove that the official's actions "caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience...." *Shillingford,* 634 F.2d at 265; *accord Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc) (replacing the "severe" injury element with "significant" injury component).

In assessing Pinkins' qualified immunity defense, the district court retroactively applied *Hudson* to both prongs of the inquiry—1) whether Appellee presented a constitutional claim, and 2) the objective reasonableness of Appellant's conduct. As stated, the court should have reviewed the objective reasonableness of Pinkins' conduct under the standards announced in *Shillingford,* which was the constitutional benchmark for excessive force claims in 1986. Because the district court did not make factual findings under the *Shillingford* standards, and because the outcome of such an inquiry is not obvious from the record on appeal, we remand this case for further proceedings.

We are not unmindful that the bifurcated qualified immunity analysis leads to a somewhat schizophrenic approach; *i.e.* the application of *Hudson* to the question of constitutional violation coupled with the application of *Shillingford* to the objective reasonableness question, even though *Hudson* jettisoned *Shillingford* 's severe injury element.[7] Nevertheless, this is the proper framework

---

[7]The district court recognized this conundrum:

> Is Rankin now to be denied a trial on his Eighth Amendment claim because the true protection of the Eighth Amendment to which he is entitled had not been recognized by the courts of this Circuit in 1986 when Pinkins attacked him? Or, is Pinkins now to be denied the full force of his qualified immunity defense because his conduct is held to a standard of objective reasonableness as measured by the Constitution, not as it was understood by the Fifth Circuit in 1986, but as it was recognized by the Supreme Court six years later? Some sense of inequity is perceived in either choice. R. 903.

to apply. *See Spann,* 987 F.2d at 1114; *Valencia,* 981 F.2d at 1448-49; *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992); *Mouille,* 918 F.2d at 551.

## III.

Accordingly, we VACATE the order denying Appellant's motion for summary judgment, and REMAND this case for further proceedings. Specifically, the district court should evaluate the objective reasonableness of Pinkins' actions with reference to the law that existed at the time of the events in question.

Motions to file record excerpts in excess of 40 pages and to file supplemental letter briefs are GRANTED; all other motions are DENIED.