United States Court of Appeals,

Fifth Circuit.

No. 95-40131
Summary Calendar.

Kenneth I. GANTHER, Plaintiff-Appellant,

v.

Tommy INGLE, Jr., et al., Defendants-Appellees.

Feb. 16, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, DAVIS and STEWART, Circuit Judges.

PER CURIAM:

The plaintiff/appellant, Kenneth I. Ganther, is a convicted felon confined in the McConnell Unit of the Texas Department of Criminal Justice (TDCJ). Ganther filed a 42 U.S.C. § 1983 civil rights action in the United States District Court for the Southern District of Texas seeking injunctive and monetary relief from TDCJ officials for alleged violations of his right to religious freedom. The district court dismissed his suit on the grounds of official immunity. Ganther now appeals both the dismissal of his case, and the interim denial of two emergency motions for injunctive relief. We AFFIRM in part, VACATE in part, and REMAND the case for further consideration.

BACKGROUND

Kenneth Ganther asserts that he is the pastor of the "House Hold Faith Full Gospel Church," a Protestant church that consists of approximately forty other TDCJ inmates. He alleges that for

about six months before he filed suit, prison officials allowed his group to meet regularly in the prison recreation yard, and also allowed it to hold a one-week revival meeting. After several months, the group had grown in size, so Ganther asked for permission to use the TDCJ chapel once a week for Bible study and once a week for a Sunday service. The TDCJ chaplain denied Ganther's request, citing a prison policy that the chapel only be used for distinct religions, rather than distinct denominations within religions. The chaplain added that the prison offered three Protestant services each week that Ganther and his group could attend. Shortly after the chaplain denied use of the prison chapel, prison officials also ordered Ganther and his group to disassemble and refrain from worship in the prison unit. Ganther maintains that prison officials violated his right to religious freedom both by denying his group access to prison facilities and by ordering his group to disassemble.

Ganther filed this suit on August 25, 1993. He named the prison chaplain and three prison wardens as defendants, in both their official and personal capacities. Ganther requested both injunctive relief from the officers' orders and monetary damages for the intentional infliction of emotional distress.

On June 17, 1994, the district court ordered service on the defendants, and ordered them to answer Ganther's complaint by August 19, 1994. On July 8, and July 20, 1994, before the defendants had answered, Ganther filed two emergency motions for injunctive relief. In the first Ganther alleged that as

2

retaliation for filing the instant suit, one Warden Woods, who is not a named defendant, changed Ganther's job assignment from an indoors position as a laundry attendant to an outdoors position as a yard worker, thereby aggravating Ganther's asthmatic condition.

In the second motion, Ganther alleged that prison officials had continued to retaliate against him by moving him into a dormitory with fresh paint that caused him respiratory problems. He acknowledged, however, that since he had filed his first emergency motion, prison officials had changed his work assignment back to an indoors position.

The defendants answered Ganther's complaint on August 17, 1994, two days late. With their answer, they also filed a motion for summary judgment on the grounds of official immunity and the failure to state a cause of action.

On August 23, 1995, Ganther filed a motion for entry of a default judgment based on the defendants' failure to file a timely answer. Without addressing this motion, the district court first denied Ganther's two emergency requests for injunctive relief. It then granted the defendants' motion for summary judgment and concurrently entered final judgment. Ganther subsequently filed a motion for relief from judgment, which the court denied.

Ganther now appeals the grant of summary judgment to the defendants, the denial of his emergency motions for injunctive relief, and the district court's decision to address the defendants' motion for summary judgment before addressing his own motion for a default judgment.

3

I.

This court reviews *de novo* the decision to grant summary judgment.  In their motion for summary judgment, defendants make three arguments for dismissal.  First, they maintain that the claims against them in their official capacities are barred by the Eleventh Amendment.  Second, they argue that the claims against them in their personal capacities are barred under the doctrine of qualified immunity.  Finally, defendants argue that Ganther failed to state a cause of action under which relief could be granted.  We address each of these arguments in turn.

Federal claims against state employees in their official capacities are the equivalent of suits against the state.[1]  The Eleventh Amendment prohibits a citizen from bringing suit against a state unless the state waives its immunity.[2]  This prohibition does not apply, however, to requests for injunctive relief.[3]

In this case, Ganther has requested both monetary and injunctive relief from the state officials.  The district court correctly ruled that the Eleventh Amendment bars Ganther's claim for damages for the intentional infliction of emotional distress.  Section 101.057 of the Texas Civil Practice and Remedies Code provides that any waiver of sovereign immunity does not apply to

---

[1]*Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, (1978).

[2]*Ex Parte Young,* 209 U.S. 123, 149, 28 S.Ct. 441, 449-50, 52 L.Ed. 714, 725 (1908).

[3]*Id.*

4

claims arising out of intentional torts.[4]   Thus, Texas has explicitly refused to waive its sovereign immunity for claims such as Ganther's.  The Eleventh Amendment bars Ganther's damages claim against the defendants in their official capacities.

The district court did not complete its Eleventh Amendment analysis, however.  It completely failed to address Ganther's request for injunctive relief against the defendants in their official capacities.  It is black letter law that the Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims.[5]

Defendants argue that this exception does not apply here because Ganther allegedly does not have the requisite standing to proceed with a claim for injunctive relief.  They argue that in order to seek an injunction against a state official, a plaintiff must show a real and immediate threat that he or she will in the future be subject to the conduct he attempts to proscribe. Defendants maintain that because all but one of the named defendants have left Ganther's prison unit since Ganther filed his suit, he cannot meet this burden, and therefore may not seek an injunction against the defendants in their official capacities.

This argument misconstrues Eleventh Amendment law.  Although

_____

[4]Tex.Civ.Prac. & Rem.Code Ann. § 101.057 (West 19--);  *see also Gillum v. City of Kerrville,* 3 F.3d 117 (5th Cir.1993).

[5]*Ex Parte Young,* 209 U.S. at 149, 28 S.Ct. at 449-50;  *see also Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 96, 104 S.Ct. 900, 905-06, 79 L.Ed.2d 67, 75 (1984).

it is true that a plaintiff must have standing to obtain relief from a federal court,[6] this requirement does not limit suits seeking to enjoin state officials any more than it limits other claims for injunctive relief.  In addition, Ganther clearly does have standing.  Ganther has retained his standing against the one remaining original defendant, and through automatic substitution, has also retained standing against the official successors of the departed defendants.[7]  Ganther's request for injunctive relief against the defendants in their official capacities falls within the established exception to Eleventh Amendment immunity.[8]  The district court should not have dismissed this portion of Ganther's case against the defendants in their official capacities.

The district court also dismissed the claim against the defendants in their personal capacities under the doctrine of qualified immunity.  In assessing a claim of qualified immunity, this court engages in a two part analysis.[9]  The court first determines if the plaintiff has alleged a violation of a clearly established constitutional or statutory right.[10]  If so, the court

---

[6]*Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 1665-66, 75 L.Ed.2d 675, 685 (1983).

[7]When a public officer is party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, *the action does not abate and the officer's successor is automatically substituted as a party.*  F.R.C.P. 25(d) (emphasis added).

[8]*Ex Parte Young,* 209 U.S. at 149, 28 S.Ct. at 449-50.

[9]*Rankin v. Klevenhagen,* 5 F.3d 103 (5th Cir.1993).

[10]*Id.* at 105.

then decides if the defendant's conduct was objectively reasonable.[11] In assessing whether a right is "clearly established," the court must use the standards applicable at the time of litigation.[12] In contrast, the court looks to the time of the alleged offense to determine if the defendant's conduct was "objectively reasonable."[13]

In this case, the law at the time of the alleged offense was different from that at the time of the litigation. Ganther filed his suit on August 25, 1993, solely on the basis of a First Amendment violation. After that time, but before the district court dismissed the case, the Religious Freedom Restoration Act of 1993[14] (RFRA) went into effect. Thus, the district court should have analyzed the first part of the qualified immunity test in light of RFRA, and should only have considered pre-RFRA law in the second part of the test. However, the district court's failure to consider RFRA in the first prong of the test was harmless error because the defendants' actions satisfy the second, objective reasonableness, prong of the qualified immunity inquiry.

Under pre-RFRA law, prisoners were only required to be given "reasonable opportunity" to exercise their religious freedom.[15]

---

[11]*Id.*

[12]*Id.* at 106; *see also, Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993).

[13]*Id.*

[14]42 U.S.C.A. § 2000bb et seq. (West 1994).

[15]*Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081-82, 31 L.Ed.2d 263 (1972).

This requirement did not include the right to receive facilities or personnel identical to that of more populous denominations.[16] Thus, at the time Ganther filed his complaint, he had no right to demand use of the prison chapel or other prison facilities to hold services for his church. Therefore, applying the law at time of their actions, the defendants' conduct towards Ganther on this request was "objectively reasonable" under the second part of the qualified immunity test. It was correct for the district court to dismiss this part of Ganther's case against the defendants in their personal capacities.

Ganther's complaint also alleges that he and his group were ordered to stop holding religious services in the recreation yard after being allowed to meet for months.[17] Under pre-RFRA law, prison officials could revoke prisoners' leave to attend particularized religious ceremonies if there was a logical connection to legitimate governmental interests and if the inmates were allowed to participate in other religious ceremonies of their faith.[18] Ganther was allowed to attend other Protestant religious ceremonies and the defendant prison officials have offered logical explanations for ordering Ganther's church to stop meeting.

---

[16]*Id.; See also Frank v. Terrell,* 858 F.2d 1090 (5th Cir.1988).

[17]*See* Plaintiff's Complaint at 2, "Plaintiff's Grounds for suit are that Defendants ordered Plaintiffs to disassemble and refrain from worshipping [sic] or fellowshipping [sic] as an organized church body on the McConnell Unit."

[18]*O'Lone v. Estate of Shabazz,* 482 U.S. 342, 350-352, 107 S.Ct. 2400, 2405-06, 96 L.Ed.2d 282, 291-292 (1987).

Specifically, the affidavit of defendant Chaplain Tommy Ingle states that three reasons for the prison's treatment of Ganther: (1) administrative and space limits at the prison and its policy of not holding denominational services, (2) prison officials' belief that allowing Ganther to lead religious services violated the spirit of *Ruiz*[19] and (3) concern that allowing Ganther to lead religious services would lead to abuse by groups of inmates who call themselves a separate denomination so that they can meet together when they want to even though they may not have any bona fide religious purpose. In light of these undisputed and logically relevant justifications for the defendants' actions, the district court correctly concluded that no material issue of disputed fact existed as to the reasonableness of the defendants' actions.

The district court refused to consider the effects of RFRA on Ganther's claim, even though Ganther raised RFRA in both his motion in opposition to summary judgment and in his motion for relief from judgment. The district court held that Ganther was inappropriately attempting to assert a new claim. This was error. The district court should have construed Ganther's response to the motion for summary judgment as a motion to amend his complaint and granted it.[20] This error was harmless with respect to Ganther's claims against the defendants' in their personal capacities but may have a significant impact on the district court's consideration

---

[19]*Ruiz v. Estelle,* 650 F.2d 555, 575 (5th Cir.1981).

[20]*Sherman v. Hallbauer,* 455 F.2d 1236, 1242 (5th Cir.1972) *See also,* F.R.C.P. 15(a), which provides that leave to amend a party's pleading "shall be freely given when justice so requires."

Ganther's claim for prospective injunctive relief against the defendants in their official capacities.  Accordingly, on remand the district court should consider Ganther's claim for injunctive relief under RFRA and make findings of fact as to whether:  1) the defendants' failure to allow Ganther's church to meet separately (even though there are protestant services available to him) places a substantial burden on him and 2) if so, whether there is any compelling interest which justifies this burden (such as orderly administration of the prison).

## II.

Ganther also appeals the district court's denial of his emergency motions for injunctive relief.  We review the denial of preliminary injunctions for an abuse of discretion.[21]

Ganther's first motion alleged that a non-defendant in this case reassigned Ganther from an indoors laundry position to an outdoors yard detail as retaliation against Ganther for filing this suit.  The district court found that the defendants had not yet been served with the complaint in this action at the time of Ganther's reassignment, and that Ganther had already been assigned to another indoors position by the time he filed his second motion for relief.  The district court concluded that Ganther would be unlikely to prevail on a claim of retaliation, and denied the request for a preliminary injunction.

Ganther's second motion alleged that as further retaliation for filing suit, prison officials had transferred him to a freshly

---

[21]*White v. Carlucci,* 862 F.2d 1209 (5th Cir.1989).

painted dormitory room, knowing that the fresh paint fumes could trigger respiratory problems. The district court found that there was no substantial likelihood that irreparable harm could result where the paint fumes would eventually dissipate.

This court finds no abuse of discretion in either decision.

III.

Finally, Ganther appeals the district court's decision to address the defendants' motion for summary judgment before addressing his own motion for a default judgment. This argument is without merit. A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.[22] Furthermore, scheduling is a matter which is generally left to the discretion of the district court. In this case, the fact that the defendants' motion was filed before Ganther's is an adequate reason for the court to rule on it first. We find no error in the district court's decision to do so.

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Ganther's damages claim against the defendants in their official capacity, and the dismissal of his claims for injunctive and monetary relief against the defendants in their personal capacities. We also AFFIRM the district court's denial of Ganther's two emergency motions for injunctive relief, and its decision to consider the defendants' motion for summary judgment before considering Ganther's motion for a default judgment. We

---

[22]*Mason v. Lister,* 562 F.2d 343, 345 (5th Cir.1977).

11

VACATE the dismissal of Ganther's claim for injunctive relief against the defendants in their official capacities.  Finally, on REMAND, we direct the district court to consider the remaining claims in light of the Religious Freedom Restoration Act of 1993.