REHEARING IN BANC GRANTED BY ORDER FILED
10/10/96; OPINION ISSUED 8/16/96 IS VACATED

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES RICHARD RILEY,
Plaintiff-Appellant,

v.                                                                          No. 94-7120

JAMES M. DORTON,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-94-259)

Argued: May 9, 1996

Decided: August 16, 1996

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
NORTON, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Michael wrote
the majority opinion, in which Judge Norton joined. Chief Judge Wil-
kinson wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Gregory C. Lisa, Student Counsel, Appellate Litigation
Clinical Program, GEORGETOWN UNIVERSITY LAW CENTER,
Washington, D.C., for Appellant. Joseph Paul Rapisarda, Jr., County
Attorney, COUNTY OF HENRICO, Richmond, Virginia, for Appel-

lee. **ON BRIEF:** Steven H. Goldblatt, Director, Ellen R. Finn, Supervising Attorney, Ajay K. Gambhir, Student Counsel, Appellate Litigation Clinical Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. James T. Moore, III, Assistant County Attorney, COUNTY OF HENRICO, Richmond, Virginia, for Appellee.

_____

## OPINION

MICHAEL, Circuit Judge:

Charles R. Riley sued James M. Dorton, a police detective, under 42 U.S.C. § 1983, alleging that Detective Dorton used excessive force against him during interrogation after his arrest. [1] The district court granted Detective Dorton's motion for summary judgment because Riley suffered only de minimis injury at the hands of the detective. We reverse and remand for further proceedings because a § 1983 plaintiff is not required to show serious injury when physical force was used against him in the course of custodial interrogation.

I.

We review the district court's grant of summary judgment de novo, viewing "the facts and inferences in the light most favorable to the nonmoving party," here Riley. Donmar Ents., Inc. v. Southern Nat'l Bank of N.C., 64 F.3d 944, 946 (4th Cir. 1995)."It is not our job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disbelieve stories that seem hard to

_____

[1] Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

believe." Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991) (internal citation omitted). For summary judgment purposes, then, we must view the following facts, described by Riley in his deposition and affidavits, as true.

Riley was wanted by the authorities in Henrico County, Virginia, on charges of rape and related offenses. He was arrested in Norfolk on March 31, 1993, by Detective Dorton, the defendant in this case, and another officer, Detective Ross. Riley was taken briefly to the police department in Norfolk where he was placed in Detective Dorton's police car for transport to the Henrico County Public Safety Department in Richmond. Once in the car either Detective Dorton or Detective Ross informed Riley of his right to remain silent and to have counsel.

During the 90-minute ride to Richmond, Detective Dorton made intimidating and insulting comments to Riley. Dorton threatened to take Riley into the woods, tie him to a tree and leave him there to die. Dorton next told Riley that an angry mob might be waiting outside the jail to beat him up before he could make it inside. In addition, Dorton called Riley's family "stupid" and a"bunch of dumb country hicks."

Upon his delivery to the Henrico County police headquarters, Riley was put in an interrogation room to face Detectives Dorton and Ross. Riley's hands were cuffed behind his back. According to Riley, Detective Dorton

> started up again [with insults] during his interrogation, and he was asking me, you know, you know, different things like my fat sister, is she a whore, and things like that, you know, and just trying to get me to breakdown.
>
> Well, anyway, he makes a few more remarks like that. Then out of the blue he just says do you know what scum looks like, and I looked him dead in the eyes and I asked him have you looked in the mirror lately.

3

(Emphasis supplied.) This angered Detective Dorton, who "jumped up" from his chair, went over to Riley, and stuck the pointed tip of a pen a quarter inch up Riley's left nostril. According to Riley, Detective Dorton "threatened to rip my nose open with the ink pen, threatened to throw me up in the corner of the room and beat me up." Detective Dorton then slapped Riley, scratching him with his fingernails and causing Riley's head to move an eighth to a quarter turn. The blow raised welts on Riley's face, but did not break the skin. Detective Ross then urged Detective Dorton to stop, saying "we're not going to have any Rodney King stuff up in here."[2] Riley sustained no permanent injury from the incident. He claims, however, that the incident has caused him severe psychological distress, including nightmares, depression and anxiety.

Riley did not waive any of his rights or make any incriminating statements during the interrogation.

Riley filed a § 1983 complaint against Detective Dorton, claiming the use of excessive force. The district court granted the detective's motion for summary judgment, holding that "Given the de minimum, albeit undoubtedly discomforting, injuries of the plaintiff, no viable claim for the unreasonable application of force exists." The district court relied entirely on our decision in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 909 (1995) (holding that a prison inmate generally may not bring a § 1983 claim predicated on the Eighth Amendment right to be free from cruel and unusual punishment if his injury is de minimis ). Riley appeals, arguing that Norman v. Taylor does not apply because his claim is based on his Fifth and Fourteenth Amendment due process rights that prohibit the use of force during police interrogation.

_____

**2** The videotaped arrest of Rodney King in 1991 by Los Angeles police received much national attention. The degree of force used during the arrest led two officers to be convicted under 18 U.S.C. § 242 for violating King's constitutional rights under color of law. See Jim Newton, 2 Officers Guilty, 2 Acquitted; Guarded Calm Follows Verdicts in King Case, L.A. Times, Apr. 18, 1993, at A1; Koon v. United States, 1996 WL 315800 (U.S. June 13, 1996).

4

II.

Detective Dorton's counsel conceded at oral argument that the summary judgment record, read in the light most favorable to Riley, shows that Riley was struck while he was undergoing custodial interrogation.**3** Riley's § 1983 claim must survive summary judgment because no unjustified physical force may be used against a suspect during custodial interrogation, even if the suspect does not sustain serious physical injury. Gray v. Spillman, 925 F.2d 90, 93-94 (4th Cir. 1991) (applying the longstanding principle that the use of force "in the course of custodial interrogation violates the fifth and fourteenth amendments of the Constitution").**4**

Our sister circuits that have considered the question unanimously agree with Gray v. Spillman:

> [T]he use of physical violence against a person who is in the presence of the police for custodial interrogation, who poses no threat to their safety or that of others, and who does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force is justified, is a constitutional violation.

_____

**3** Riley described his encounter with the detectives as an interrogation. According to Riley the detectives were trying to get him to "breakdown" and were using a "good cop/bad cop" interrogation technique. Police activity may be interrogation even if the police never ask the suspect a question. Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980). The test of whether police conduct amounted to interrogation is an objective one: were the "words or actions on the part of the police" reasonably likely to elicit some incriminating response. Id. An important factor in applying the test, however, is "the perceptions of the suspect." Id.

**4** Riley appeared pro se in the district court and neither he nor Dorton's counsel cited Gray v. Spillman to the district judge. See Model Rules of Professional Conduct Rule 3.3(a)(3) (lawyer must"disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"); Model Code of Professional Conduct EC 7-23; Va. Code of Professional Responsibility DR 7-102(3) & EC 7-20.

5

Ware v. Reed, 709 F.2d 345, 351 (5th Cir. 1983); accord Wilkins v. May, 872 F.2d 190, 195 (7th Cir. 1989), cert . denied, 493 U.S. 1026 (1990); Rex v. Teeples, 753 F.2d 840, 843 (10th Cir.), cert. denied, 474 U.S. 967 (1985); see also Weaver v. Brenner , 40 F.3d 527, 536 (2d Cir. 1994); Cooper v. Dupnik, 963 F.2d 1220, 1244-45 (9th Cir. 1991), cert. denied, 506 U.S. 953 (1992).

The rule, recognized in Gray and the cases cited above -- that no physical force is constitutionally permissible during interrogation -- is based on the "due process right to be free from [police] conduct designed to overcome the accused's will and produce an involuntary incriminating statement." Weaver v. Brenner , 40 F.3d at 536. The due process violation is complete with the use of force, even if there is no confession. Id.; Cooper v. Dupnik, 963 F.2d at 1244.

Detective Dorton argues that there is no violation here because Riley "suffered, at most, de minimis injuries." Brief of Appellee at 10. That is simply wrong. "The suggestion that an interrogee's constitutional rights are transgressed only if he suffers[serious] physical injury demonstrates a fundamental misconception of the fifth and fourteenth amendments, indeed, if not our system of criminal justice." Gray, 925 F.2d at 93. Police can violate a suspect's constitutional rights under the Fifth and Fourteenth Amendments without leaving a "visible sign of any beating, such as bruises or scars." Malinski v. New York, 324 U.S. 401, 403 (1945).

In the custodial interrogation context, the severity of a § 1983 plaintiff's injuries is relevant only to the question of damages, and a plaintiff may be awarded nominal damages and attorney's fees even if his physical injury is de minimis. Gray, 925 F.2d at 93-94 & n.1. Such relief is available under § 1983 for good reason. Merely suppressing any confession resulting from coercive police conduct does not adequately protect the rights of the detainee. The rule against the use of unjustified force in custodial interrogation is absolute, and it must be honored from the moment of arrest. Moreover, not every detainee will succumb to physical force and confess. It would be odd indeed to deny a suspect a § 1983 remedy simply because he has the strength of will to persist in refusing to confess while he is being smacked around.

6

Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 909 (1995), does not apply here. Unlike the Norman defendant (a prison guard), Detective Dorton had no legitimate justification for the use of force. And unlike the Norman plaintiff (a convicted prisoner), Riley asserts Fifth and Fourteenth Amendment rights to be free from physical abuse during the course of custodial interrogation, rather than an Eighth Amendment right to be free from cruel and unusual punishment during imprisonment after conviction.

In Norman we held that so long as a prison guard has some legitimate rationale for the use of force against a prisoner, an Eighth Amendment claim "generally should not lie where any injury sustained by the plaintiff is de minimis."Norman, 25 F.3d at 1263.**5**In Norman, for example, the guard hit the prisoner-plaintiff on the thumb with a set of large brass keys while trying to enforce a prison rule against smoking in a restricted area. Id. at 1260. In addition, the prisoner had been making noise and yelling at other inmates during roll call. Id. at 1261.**6**

_____

**5 Norman** recognized that even with only de minimis physical injury a prisoner could recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise"of a sort repugnant to the conscience of mankind." Norman, 25 F.3d at 1263 n.4 (quoting Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992) (internal quotation marks omitted)); see also Williams v. Benjamin, 77 F.3d 756, 762 n.2 (4th Cir. 1996) ("courts should be wary of finding uses of force that inflict `merely' pain but not injury to be de minimis"); Wilson v. Chicago, 6 F.3d 1233, 1236 (7th Cir. 1993) ("even a murderer has a right to be free from torture") (Posner, J.), cert. denied, 114 S. Ct. 1844 (1994).

**6** The cases relied upon by the dissent all present facts similar to those presented in Norman v. Taylor. In Jackson v. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993) (per curiam), for example, a pretrial detainee had started a fire in the jail and had been sprayed with a fire extinguisher by the guard who had come to put out the fire. Obviously, the court found no constitutional violation there. None of the cases relied upon by the dissent present facts even remotely similar to those presented here, that is, none involve a pretrial detainee intentionally struck by an officer who lost his temper during the course of a custodial interrogation.

7

In this case, however, Detective Dorton had no legitimate justification for the use of any force. Riley was handcuffed and posed no security risk. Detective Dorton has come forward with no evidence that Riley was violating any rule necessary to the good order of the station house. Detective Dorton does not claim that he acted "in a good faith effort to maintain or restore discipline," see Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied , 414 U.S. 1033 (1973)). Nor does Detective Dorton claim he hit Riley in order to quell a disturbance threatening the security of the station house, see Rankin v. Klevenhagen, 5 F.3d 103 (5th Cir. 1993). Indeed, Detective Dorton's counsel conceded at oral argument that the record on summary judgment, when read in the light most favorable to Riley, demonstrates that Detective Dorton was simply "a cop who lost his cool." See Courville v. Town of Barre, 818 F. Supp. 23, 26 (D. Mass. 1993) (unprovoked slap may not be excused simply because it resulted only in de minimis injury). The sole motive for the use of force here was Riley's single verbal insult to Detective Dorton. We have held consistently that mere verbal provocation never justifies the use of force by an officer against a person in custody. Miller v. Leathers, 913 F.2d 1085, 1089 (4th Cir. 1990) (en banc) (inmate), cert. denied, 498 U.S. 1109 (1991); United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990) (pretrial detainee), cert. denied , 498 U.S. 1049 (1991).

A more fundamental distinction between this case and Norman is the difference between the interests sought to be protected. A duly convicted prison inmate is protected primarily by the Eighth Amendment's prohibition against cruel and unusual punishments. Whitley, 475 U.S. at 327. A pretrial detainee, by contrast, is protected both by the Fifth Amendment's protection against compelled self-incrimination and by the Fourteenth Amendment's protection against "excessive force that amounts to punishment" before trial. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); accord Bell, 441 U.S. at 535-39 (1979); Cobb, 905 F.2d at 788-89. Pretrial detainees are entitled to broader protection than would be available under the Eighth Amendment alone because a pretrial detainee is presumed innocent of any crime until he is proven guilty after a fair trial or by a knowing and voluntary guilty plea. See Bell, 441 U.S. at 535-36. This distinction, we believe, is why Norman did not venture to overrule Gray v. Spillman. Indeed, Norman relied primarily on Eighth Amendment

8

cases and did not even cite Gray. Norman cited no case relating to a pretrial detainee's right to be free from physical force while being interrogated.

Because Riley asserts the rights of a pretrial interrogee, his § 1983 claim survives summary judgment, even though he has not demonstrated the existence of any serious or lasting physical injury.**7**

III.

We recognize that

> solution of crime is, at best, a difficult and arduous task requiring determination and persistence on the part of all responsible officers charged with the duty of law enforcement. And, certainly, we do not mean to suggest that all interrogation of witnesses and suspects is impermissible. Such questioning is undoubtedly an essential tool in effective law enforcement.

Haynes v. Washington, 373 U.S. 503, 514-15 (1963). We must, however, apply the longstanding rule recognized in Gray and reverse the award of summary judgment to Detective Dorton.**8** Of course, the

_____

**7** Riley's deposition testimony and affidavits put into issue whether Detective Dorton in fact stuck a pen in Riley's nose, threatened to rip it open, and then slapped him. In support of its argument that summary judgment was proper, the dissent says that we "never [say] how a jury might conceivably find plaintiff worthy of belief." Post at 13. "Whether or not [Riley's] testimony should be believed is a credibility determination that is not for us to make." Gray v. Spillman, 925 F.2d at 95. That is for the trier of fact.

**8** Contrary to the dissent's suggestion, see post at 15, our decision today will not "fuel[ ] a proliferation of frivolous lawsuits." We are simply reaffirming a longstanding rule that up to now has not thwarted legitimate law enforcement activities. Indeed, "no unjustified force during interrogation" has been the unquestioned rule in every one of the five other circuits that have had occasion to consider cases like this one. There is a good reason why the standard urged by the dissent is unacceptable for custodial interrogation: it would give police a license to hit interrogees, so long as the police leave no marks.

detective will have a full opportunity to convince a trier of fact that he used no unjustified force against Riley. In other words, Detective Dorton will have the chance to show that he "obey[ed] the law while enforcing the law." See Spano v. New York, 360 U.S. 315, 320 (1959). We know that trials can be inconvenient and discomfiting, but we are convinced that a trial is required here to determine whether the bounds of due process were exceeded.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED

WILKINSON, Chief Judge, dissenting:

There are instances when police officers clearly overstep their bounds and must be brought to account. This is not one. There are cases, on the other hand, when an action for damages against police officers will seriously interfere with the integrity of the law enforcement function. This is such a case. The district court recognized as much, finding appropriately that under our recent en banc decision in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 909 (1995), the sheer absence of evidence of any real injury required the entry of summary judgment against the plaintiff. I would affirm its judgment.

I.

The rules of summary judgment do not call for the degree of credulity embodied in the majority opinion, lest Fed. R. Civ. P. 56 forfeit entirely its gatekeeping function. This case is made for summary judgment. The record simply fails to bear out appellant Riley's allegation that he suffered any injury as a consequence of his interrogation. In fact, the opposite conclusion emerges -- that Riley at one time or another has perceived injury from every aspect of his post-arrest detention except his interrogation. In no sense, then, can he be said to have carried his burden of demonstrating a constitutional violation.

Appellant, by any account, is an incessant complainer; the record is replete with evidence of his unbridled resolve to report any physical

10

or psychological discomfort, no matter how trifling, to medical personnel. In the months following his arrest, he requested medical attention for a stream of physical ailments, including a hangnail, an ingrown toenail, a runny nose, a chill, dizzy spells, a "knot" in his groin, broken skin between his toes, and soreness in his back, neck, ear, throat, and left thumb. He complained that he needed to soak his foot after losing a toenail, that his cellmate kept him awake, and that his back pain prevented him from relinquishing his bottom bunk to a fellow inmate who had "only" suffered a leg injury. He even sought medical authorization to receive boxer underwear instead of briefs because of a mole on his thigh (which medical staff, after examination, deemed unaffected by his choice of undergarments).

Appellant's list of psychological difficulties is no less extensive. In his dozens of mental health sessions, he complained of being depressed for several years and of having crying spells once or twice a day. He expressed fear of harassment by other inmates and found it difficult to deal with their teasing and taunting. He frequently reported being discouraged by the course of his legal defense, the potential sentence he faced, the societal reaction to his offenses, and the possible outcome of his eventual trial. He grew angry after hearing the testimony of certain witnesses, and he worried about conflicts between his girlfriend and his family. More than once, he related suicidal urges. His many emotional complaints and psychological troubles led examiners to report that "Mr. Riley can turn on tears at will," and to suggest that he "rather enjoys making manipulative gestures and threats to get attention," an assessment "he did not deny."

Given all of this, one would expect Riley to have complained at least once about any physical or psychological discomfort suffered as a result of his interrogation. But the Health Services Administrator at Henrico County Jail, where appellant was detained, "found no record of any complaints by Mr. Riley to either medical or mental health staff of injury to, or discomfort in, [his] nose or shoulders which relates to his allegations." She also "found no record of any concerns related to the alleged threats" by Detective Dorton among Riley's scores of mental health sessions. Riley's own testimony, in fact, is that he never specifically complained of any injury from the incidents he now identifies in this suit (the handcuffing, the threats, the slap to his face, and the pen in his nose). In short, Riley has compiled a sin-

11

gular record as a chronic, uninhibited complainer, yet he never once complained about the interrogation which he now asserts caused him substantial injury.

The summary judgment rule was developed precisely to deal with claims arising in such a context. Other than appellant's own bald allegations, the record contains no evidence indicating that he suffered any injury of any sort from the interrogation. If anything, Riley's penchant for bringing the slightest physical or psychological discomfort to the attention of medical staff, and the conspicuous absence of any such complaints regarding the interrogation, suggests that any injury he now asserts could not possibly have been caused by Detective Dorton's actions during the interrogation. Since appellant has failed to come forward with sufficient evidence of an essential element of his claim, summary judgment was properly entered against him. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); White v Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994) (requiring entry of summary judgment in excessive force action where no evidence connected injury to incident complained of).

Even assuming that Riley did suffer some form of physical or psychological injury from the interrogation, the injury was unquestionably de minimis, and thus insufficient under Norman v. Taylor, 25 F.3d at 1259, to give rise to an excessive force action. By his own account, any physical contact lasted less than thirty seconds and caused him primarily "mental" discomfort. And that he did not seek treatment or counseling after the interrogation indicates that, even by his own extreme standards, any psychological discomfort was negligible. Riley's constitutional claim, as a result, should be barred by Norman, which holds that "an excessive force claim generally should not lie where any injury sustained by the plaintiff is de minimis." Id. at 1263.**1**

_____

**1** The majority contends that the dissenting position "would give police a license to hit interrogees, so long as the police leave no marks." This is incorrect. Nowhere do I insist on physical as opposed to psychological injury. I would simply apply a de minimis threshold to any type of injury, whether physical or psychological.

12

Norman is not, as the majority contends, limited to claims of excessive force brought by convicted prisoners under the Eighth Amendment. While the decision undoubtedly involved an Eighth Amendment claim, and its language thus refers primarily to that provision, I read its requirement that plaintiffs demonstrate more than de minimis injury to apply to all excessive force actions. Other courts have applied a de minimis standard to excessive force actions outside of the Eighth Amendment, including claims -- like Riley's -- asserted by pretrial detainees under the due process clause. See Jackson v. Culbertson, 984 F.2d 699 (5th Cir. 1993) (per curiam). The Supreme Court, moreover, has supported such a requirement in due process cases, commenting that while "the state cannot hold and physically punish an individual except in accordance with due process of law," "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977).

Any suggestion to the contrary in Gray v. Spillman, 925 F.2d 90 (4th Cir. 1991), cannot apply to the circumstances of this case, where the facts and record indisputably demonstrate that any injury suffered and any force used was no more than de minimis . Otherwise, the barest allegation of excessive force in an interrogation, even if producing no confession and resulting only in some form of psychological discomfort (and even that wholly unsupported by the factual record), would automatically survive summary judgment and proceed to trial. Rule 56 is not so easily eluded. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and . . . it should be interpreted in a way that allows it to accomplish this purpose." Celotex, 477 U.S. at 323-24. Appellant's claim, as the district court understood, falls squarely within this category.

Finally, the majority's response to this claim is instructive. The majority never informs us how a jury might conceivably find this plaintiff worthy of belief. It simply says we must go to trial over any bald assertion. The majority never disputes the endless record of plaintiff's trivial complaints. It never suggests that plaintiff sought medical attention of any sort for any harm arising from the interrogation. It never even contends that plaintiff suffered more than de minimis physical or psychological injury. It only wheels out stock

13

rhetoric of police brutality in support of its position. <u>See supra</u> p. 6 (discussing a suspect's "being smacked around"); <u>supra</u> n.8 (such a rule "would give police a license to hit interrogees, so long as the police leave no marks"). Such general rhetoric is sometimes applicable and sometimes not. In all events, it is a poor substitute for a discerning look at whether a particular case is deserving of a trial.**2**

II.

Allowing suits of this sort to proceed to trial, despite <u>Norman</u> and despite Rule 56, will visit harmful effects on the interrogation process and on law enforcement in general. To be sure, due process requires the government to produce evidence against a defendant "by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips." <u>Culombe v. Connecticut</u>, 367 U.S. 568, 582 (1961) (opinion of Frankfurter, J.). Yet offsetting this important concern is an equally significant one, "the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225 (1973). There is a balance to be struck between these two interests, <u>Moran v. Burbine</u>, 475 U.S. 412, 426 (1986), one that"cannot be resolved simply by wholly subordinating one set of opposing considerations to the other." <u>Culombe</u>, 367 U.S. at 587. The majority opinion does just that,

_____

**2** The majority's reliance on five cases in other circuits that are "like this one," <u>supra</u> n.8, is misplaced -- those cases are not at all "like this one." None involved a factual record that so manifestly calls into doubt the plaintiff's allegations and exposes the insubstantiality of his claims. In one case, <u>Rex v. Teeples</u>, 753 F.2d 840 (10th Cir.), <u>cert. denied</u>, 474 U.S. 967 (1985), taped transcripts of the interrogation divulged that the suspect had repeatedly asked for an attorney. In another, <u>Wilkins v. May</u>, 872 F.2d 190 (7th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1026 (1990), the district judge suppressed the defendant's statements, believing his claim that the police had pointed a gun at his head during his interrogation. The three other cases are inapposite. Two simply reaffirm the non-controversial proposition that use of unlawful coercion in attempting to obtain a confession is violative of due process. <u>Weaver v. Brenner</u>, 40 F.3d 527, 536 (2d Cir. 1994); <u>Cooper v. Dupnik</u> , 963 F.2d 1220, 1244-45 (9th Cir.), <u>cert. denied</u>, 506 U.S. 953 (1992). The third involved the legal validity of jury instructions, not the factual showing necessary to survive summary judgment. <u>Ware v. Reed</u>, 709 F.2d 351 (5th Cir. 1983).

14

however, unnecessarily ushering appellant's meritless claim to trial at the expense of effective law enforcement.

There are already two important checks in place to prevent the balance from tipping too far on the side of government in the interrogation setting. The first is the well-established rule that due process prohibits any use of confessions obtained through coercion. See, e.g., Mincey v. Arizona, 437 U.S. 385 (1978); Jackson v. Denno, 378 U.S. 368 (1964). The second is the availability of a damages action where there is some concrete evidence, more than just unsupported allegations, of unjustified injury at the hands of law enforcement officials. Both of these -- an extracted confession and evidence of injury -- provide objective indication of police excess. Neither, however, is present here. Appellant Riley made no statement against his interest during his interrogation. And, as discussed above, there is no evidence he suffered injury from the interrogation; if anything, the record refutes any such claim.

By dispensing with any requirement of physical injury and relying only on bald assertions of psychological injury, the majority subjects every instance of police interrogation to a section 1983 suit. Every instance of police questioning entails some psychological discomfort for its subject. That is the very nature of an interrogation, and also to some extent its purpose. Consequently, if plaintiffs can survive summary judgment based only on flimsy allegations of psychological trauma of the type presented here, Rule 56 will be a completely empty vessel in this context. At the least, some other evidence of psychological injury, such as a documented complaint to medical staff, should be required. Otherwise, the prospect of attorney's fees in excessive force actions will produce a lawyer's field day, fueling a proliferation of frivolous lawsuits alleging some indistinct form of injury from police questioning.

The result will be that effective interrogation, a vital tool in the arsenal of law enforcement, see Moran, 475 U.S. at 426, will be substantially compromised as police officers struggle to avoid the prospect of a damages action. The Constitution, moreover, will become nothing more than a vehicle for filing dignitary tort actions against state law enforcement officials. The due process clause is not a code of good manners, however; nor is it a substitute for state tort law.

15

After all, "[a]lthough `the least touching of another in anger is a battery,' it is not a violation of a constitutional right actionable under 42 U.S.C. § 1983." <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.) (citation omitted), <u>cert. denied</u>, 414 U.S. 1033 (1973). The Constitution, instead, exists to remedy real abuses by law enforcement officials, documented by the sort of evidence of injury that is sorely lacking here. This was the central message of our opinion in <u>Norman v. Taylor</u>, 25 F.3d at 1259, the reason for its requirement that plaintiffs alleging excessive force show more than <u>de minimis</u> injury. This is a message that is lost on my fine colleagues in the majority.**3** I would affirm the judgment of the district court.

_____

**3** This is also the message of a case cited by the majority supposedly in support of its position, <u>Wilkins v. May</u>, 872 F.2d 190 (7th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1026 (1990). In that case, the Seventh Circuit observed that the "relevant inquiry is not freedom from unlawful interrogations but freedom from <u>severe</u> bodily or mental harm inflicted in the course of an interrogation." <u>Id.</u> at 195 (emphasis added). Plaintiffs thus must cross "a high threshold," one that requires showing "misconduct that a reasonable person would find so beyond the norm of proper police procedure as to shock the conscience, and that is calculated to induce not merely momentary fear or anxiety, but <u>severe</u> mental suffering." <u>Id.</u> (emphasis added). This, plainly, is not at all the view of the majority. If it were, appellant's claim could not possibly survive summary judgment.

16