**Michael A. WHITE, Plaintiff–Appellee,**

v.

**Madeline HOLMES; Charles Rosenkoetter, Defendants–Appellants.**

**No. 93–2464.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1993.

Decided April 11, 1994.

Rehearing Denied May 18, 1994.

its expert's findings.

Stewart M. Freilich, Asst. Atty. Gen., Jefferson City, MO, argued, for appellants.

Thomas L. Orris, St. Louis, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Madeline Holmes and Charles Rosenkoetter appeal the district court's denial of their joint motion for summary judgment in the 42 U.S.C. § 1983 suit filed against them by Michael White. We reverse and remand with instructions for the court to enter summary judgment in favor of the defendants.

## I. BACKGROUND

Holmes was employed as an institutional librarian at the Missouri State Penitentiary ("MSP"), and Rosenkoetter was her immediate supervisor. In February 1987, Holmes was admitted to a psychiatric hospital after experiencing difficulties at home. Although Holmes had a history of psychological problems prior to working at MSP, Rosenkoetter first became aware of her mental illness as a result of her hospitalization. Holmes was diagnosed as suffering from bipolar disorder

due to a chemical imbalance.[1] Rosenkoetter contacted her treating physician and inquired whether her condition would affect her ability to return to work as a librarian at a maximum security prison. Her physician informed Rosenkoetter she was well enough to resume her job duties and was taking medication to control her illness, but could still suffer future relapses. After her hospitalization, Holmes continued working at the MSP without any problems for several months.

On the morning of August 27, 1987, MSP workers noticed Holmes was acting strangely while in the staff dining room. Her co-workers described Holmes as nervous, talkative, and agitated. An employee alerted Rosenkoetter about Holmes' unusual behavior. When Holmes left the dining room, Rosenkoetter followed her to the education building where the library is located. Michael White, an MSP inmate, was sitting by the door waiting for the library to open. Holmes attempted to unlock the building's door, but she became upset when she could not get it open. She then threw her keys at White, and they hit him in his mid-section. White handed the keys back to Holmes. She put her hands on White's face, began flailing her arms at his head, and yelled at him to open the door. When Rosenkoetter arrived on the scene, he directed Holmes to stop what she was doing. Holmes dropped her hands from White's face and was escorted to the warden's office.

White contends Holmes was holding the keys when she hit him, and the keys slashed his ear. Although White does not know whether the keys actually entered his ear, he claims his ear drum was punctured as a result of Holmes' attack on him. Almost two years after this incident, White underwent surgery for a perforated ear drum. The physician who performed White's surgery and treated him testified that in his medical opinion White's perforated ear drum was caused by recurring ear infections rather than a puncture wound. White did not present any medical evidence to rebut this testimony.

White claims Holmes and Rosenkoetter violated his Eighth Amendment right to be free from cruel and unusual punishment. In their motion for summary judgment, Holmes and Rosenkoetter argued they did not violate any clearly established laws and are entitled to qualified immunity.[2] In a supplemental motion for summary judgment, the defendants argued White failed to establish he suffered more than *de minimis* injuries. The district court concluded the defendants were not entitled to qualified immunity because Holmes' intent and Rosenkoetter's knowledge of her dangerousness are questions for the jury. Holmes and Rosenkoetter appeal.

## II. DISCUSSION

▪ We begin by addressing White's contention that we do not have jurisdiction over this appeal. Although the denial of a motion for summary judgment is not usually considered a final order, a defendant may immediately appeal from the court's denial of immunity to a government official. *Anderson v. Roberts*, 823 F.2d 235, 237 (8th Cir.1987). The issue of whether to grant qualified immunity is a question of law, which we review *de novo*. *E–Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 477 (8th Cir.1989).

▪ Government officials who are performing discretionary functions are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). We have explained that in deciding whether an official is entitled to qualified immunity, "a court must determine whether the official's action was objectively legally reasonable in the light of the legal rules that were clearly established at the time the action occurred." *Cole v. Bone*, 993 F.2d 1328, 1332 (8th Cir.1993).

---

1. Bi-polar disorder, also known as manic depressive illness, is characterized by symptoms that include mood swings, an increased sense of energy, urgency to speak, and impulsive behavior.

2. The defendants also argued that Holmes' mental illness caused her inability to form the intent necessary to cause a constitutional violation. Because of our resolution of this case, we need not reach this issue.

When there is no question that the law is clearly established, it is appropriate for us to ascertain if there is a genuine issue of material fact as to whether the defendant's actions violated the law. *Anderson*, 823 F.2d at 237. We apply the same standard as the district court; we view the evidence most favorable to the nonmoving party and ask whether there is a genuine issue of material fact. *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir. 1993). "[E]ven if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Anderson*, 823 F.2d at 238 (quotation omitted). Thus, we have jurisdiction to determine whether the defendants have met their burden of showing that there is no material issue that would allow a jury to find in favor of White. *See id.*

### A. White's Claim Against Rosenkoetter

■ White argues Rosenkoetter violated his clearly established constitutional right to be free from cruel and unusual punishment. White attempts to substantiate this claim in two contexts. First, Rosenkoetter failed to adequately supervise Holmes and take precautions to prevent this incident from occurring. Second, Rosenkoetter allowed Holmes, a mentally ill employee who was subject to relapses, to continue interacting with inmates at a maximum security prison even though he knew or should have known that Holmes would attack one of the inmates.

■ A supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity. *Bolin v. Black*, 875 F.2d 1343, 1347 (8th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989). Rather, "a cause of action predicated on a supervisor's failure to supervise or control his subordinates may be maintained only if a defendant demonstrated deliberate indif-

ference or tacit authorization of the offensive acts." *Id.* (quotation omitted). Likewise, supervisory liability for a pervasive and unreasonable risk of harm from a specified source must be based on deliberate indifference or tacit authorization. *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir.1988) (discussing nonintervention by prison personnel in fights between inmates).

After reviewing the record and giving White the benefit of all inferences drawn from the facts, *Anderson*, 823 F.2d at 238, we find he has failed to present evidence that Rosenkoetter was deliberately indifferent toward or tacitly approved Holmes' conduct. Following Holmes' hospitalization, Rosenkoetter contacted her physician and was assured she was fit to return to work. Although her physician noted Holmes might have relapses, this comment does not suggest that Holmes could become violent. Holmes had no history of aggressive behavior or problems at work prior to this incident, and Rosenkoetter had no reason to know of Holmes' potential for the type of behavior she demonstrated against White. Furthermore, Rosenkoetter did not condone her conduct and, in fact, intervened to stop it. White has failed to establish that Rosenkoetter's conduct, either in his supervision of Holmes or in his retaining her as an employee at the MSP, violated any clearly established constitutional rights.[3] Therefore, Rosenkoetter is entitled to summary judgment based on qualified immunity.

### B. White's Claim Against Holmes

■ There is no question that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, — U.S. —, —, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). White claimed he suffered a punctured eardrum as a result of Holmes' intentional attack against him. However, Holmes has presented evidence that White had a history of chronic ear infections[4] and that his perforated ear drum

---

**3.** White's argument that Rosenkoetter breached his duty under 18 U.S.C. § 4042 (1988) to use diligence in keeping inmates safe and free from harm is without merit. Section 4042 applies to federal, not state prisons.

**4.** White's medical records reveal that he suffered numerous ear infections both before and after the altercation with Holmes. In fact, White was examined for complaints of an ear infection on

was not a result of her conduct. White concedes there is no evidence his ear problems was caused by this incident. He urges instead that the significance of his injuries are irrelevant. Relying on *Hudson,* White claims serious injury is unnecessary to support a claim of cruel and unusual punishment.

■ White misconstrues the ramifications of the *Hudson* decision. Although the Court renounced the requirement that a plaintiff prove a certain arbitrary quantity of injury in excessive force cases, the court explained:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.... The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Id.* at ——, 112 S.Ct. at 1000 (1992) (quotations omitted). The Court acknowledged that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* (quotation omitted). While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation. *See Cummings v. Malone,* 995 F.2d 817, 822–23 (8th Cir.1993) (The extent of injury "is a relevant factor as to whether or not the punishment inflicted was cruel and unusual."). A court must also look to the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred. (quotation omitted). *Id.* at 822.

White has admitted he was not in pain immediately after the altercation. From the record, there is no evidence that White's perforated ear drum is related to this incident. We conclude that the amount of force Holmes used was *de minimis,*[5] and Holmes' behavior is not of the repugnant or "diabolic or inhuman" nature that concerned the Court in *Hudson.* Holmes has presented sufficient evidence that there is no genuine issue of fact in this case to create an Eighth Amendment question, and White has failed to present any evidence in rebuttal. Thus, Holmes is entitled to summary judgment.

## III. CONCLUSION

We reverse the district court's denial of the defendants' motion for summary judgment and remand with instructions to dismiss.

---

August 25, 1987, two days prior to the incident in question.

5. Because we find that the level of force used did not rise to a level of constitutional recognition, we take no position on the significance of this being an isolated and unauthorized occurrence.