Frankie Carolyn **RODGERS,** Appellant,

v.

**MAGNET COVE PUBLIC SCHOOLS;**
Benton Public Schools, Appellees.

No. 93–4066.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1994.

Decided Sept. 1, 1994.

John M. West, Washington, DC, argued (Larry Hartsfield, Little Rock, AR, on brief), for appellant.

George Hopkins, Malvern, AR, argued (Robert V. Light, Little Rock, AR, on brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, WELLFORD,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Frankie Carolyn Rodgers appeals from a district court order granting summary judgment in favor of defendants, Magnet Cove Public Schools and Benton School District. Rodgers argues that the District Court erred when it dismissed her claim for discrimination under Section 504 of the Rehabilitation Act and her pendent state claim for violation of the Arkansas Handicapped Persons Act, Ark.Code Ann. § 20–14–303, for failure to state a cause of action on the basis that traditional legal damages (the only relief sought) were not available. We hold that Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, does provide a cause of action for legal damages. We therefore reverse and remand for further proceedings.

## I.

Frankie Carolyn Rodgers contracted with the Magnet Cove Public Schools to teach during the 1989–90 school year. During that year Rodgers was hospitalized for bipolar manic illness which forced her to take 17 consecutive days off. Rodgers's doctor wrote a letter stating that the symptoms Rodgers had exhibited, "excessive moodiness, extreme irritability, weight loss, impulsivity, excessive talkativeness, hostility, aggressiveness, poor judgment, easy distractibility, increased motor activity, and reckless behavior," were a result of her physical illness. That letter, however, also opined that Rodgers, through medication, had obtained substantial relief from her symptoms, that her prognosis for a normal life was good, and that she would be able to perform her job duties.

In the spring of 1990, Rodgers received notice that the superintendent of the Magnet Cove Public Schools would recommend to the School Board that her teaching contract not be renewed. She then requested a medical leave of absence for the 1990–91 school year. The Board granted the request, but Rodgers never signed the requisite agreement. Later, Rodgers signed a contract with the Benton public schools to teach for the 1990–91 school year. That contract, however, was terminated for failure to disclose the fact that she was on medical leave from Magnet Cove. Subsequently, the Little Rock School District hired Rodgers, but it has not renewed its contract with her.

Rodgers, in 1991, began receiving social-security-disability payments.

## II.

Rodgers asserts that she can sue for damages under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, or, in the alternative, under 42 U.S.C. § 1983 for violation of her Section 504 rights. If we hold that she has a right of action for damages under Section 504, reversal will be warranted and we will not need to determine whether Rodgers has a right to recover under § 1983. Therefore, the issue is whether Rodgers can maintain her suit for violation of Section 504 when the only remedy she seeks is money damages.

Section 504 of the Rehabilitation Act[1] provides that an otherwise qualified person shall not be discriminated against, solely by reason of a handicap, by any program or activity which receives federal financial assistance. (The defendants receive such assistance.) To insure that such discriminatory actions do not occur, Congress incorporated the remedies and procedures of Title VI of the Civil Rights Act of 1964.[2] Therefore, we must

---

* The Hon. Harry W. Wellford, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. Section 504, codified at 29 U.S.C. § 794, provides in part:

    No otherwise qualified handicapped individual in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be

    subjected to discrimination under any program or activity receiving Federal financial assistance....

2. Section 505, codified at 29 U.S.C. § 794a(a)(2), provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assis-

determine what remedies are available under Title VI to decide whether Rodgers is entitled to money damages for a violation of Section 504. We look first to the Supreme Court's recent decision in *Franklin v. Gwinnett County Public Schools,* — U.S. —, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), and then we turn to this Court's decision in *Miener v. State of Missouri,* 673 F.2d 969, 979 (8th Cir.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d. 171 (1982).

In *Franklin* the Court had to decide whether a private right of action under Title IX includes all traditional legal and equitable remedies. The Court held that, once a right of action is created, "we presume availability of *all* appropriate remedies unless Congress has expressly indicated otherwise. This principle has deep roots in our jurisprudence." *Franklin,* — U.S. at — – —, 112 S.Ct. at 1032–33 (citations omitted) (emphasis added). The Court announced the general rule "that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Id.* — U.S. at —, 112 S.Ct. at 1035. See *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).

The Supreme Court then examined Title IX to determine whether Congress had indicated an express intent to limit the presumed availability of all appropriate legal remedies. After determining that Title IX does not include any express limitation, the Court examined two civil-rights acts that amended, among other things, both Title IX and Section 504. Those two amendments, the Civil Rights Remedies Equalization Amendment of 1986, 42 U.S.C. § 2000d–7, and the Civil Rights Restoration Act of 1987, Pub.L. 100–259, 102 Stat. 28 (1988), the Court noted, were drafted after it had decided *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). *Franklin, supra* — U.S. at —, 112 S.Ct. at 1036. In *Cannon* the Court applied the common-law tradition, which regarded the denial of a remedy as an exception rather than the rule, to hold that Title IX was enforceable through

an implied right of action. *Ibid.* In "full cognizance of that decision," Congress had an opportunity with the two amendments to limit the remedies available in a suit brought under Title IX or Section 504. *Franklin* — U.S. at —, 112 U.S. at 1036. Congress did not do so. *Ibid.* With the enactment of the Civil Rights Restoration Act of 1987, Congress broadened the coverage of the anti-discrimination provisions and did not in any way alter the "existing rights of action and the corresponding remedies permissible under Title IX, Title VI, [or] § 504...." *Ibid.*

*Franklin,* therefore, states that Title IX provides a full spectrum of remedies. Does that mean that all legal and equitable remedies are available under Title VI, and, therefore, also under Section 504? We believe it does. In its analysis of Title IX, the Supreme Court used some of its earlier decisions to decide what remedies exist under Title IX. *Franklin, supra* — U.S. at —, 112 S.Ct. at 1035, (citing *Guardians Assn. v. Civil Service Comm'n of New York City,* 463 U.S. 582, 597, 103 S.Ct. 3221, 3230, 77 L.Ed.2d 866 (1983) (back pay allowed under Title VI); *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 630–31, 104 S.Ct. 1248, 1252–53, 79 L.Ed.2d 568 (1984) (back pay allowed under Section 504 for acts of intentional discrimination)). The Court relied on its earlier decisions which concerned Title VI and Section 504 because Title IX was patterned after Title VI and Congress intended to create Title IX remedies comparable to those available under Title VI. *Id.* See *Cannon v. University of Chicago,* 441 U.S. 677, 694, 703, 99 S.Ct. 1946, 1956, 1961, 60 L.Ed.2d 560 (1979). The anti-discrimination provisions of Section 504 and of Title IX both largely repeat the language of Title VI. Therefore, we believe that the Court's holding on Title IX in *Franklin* applies equally to Title VI and Section 504 cases.

Ten years before *Franklin,* this Circuit held that "damages are available under § 504 as a necessary remedy for discrimination against an otherwise qualified handicapped individual." *Miener,* 673 F.2d at 979. We based this conclusion on the principle that "where legal rights are invaded and a federal

tance or Federal provider of such assistance un-

der section 794 of this title."

statute provides a right to sue for such invasion, federal courts may use any available remedy to make good the wrong." *Id.* at 977, citing *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). The Supreme Court's holding in *Franklin* does not limit or overrule this Circuit's earlier decision. Instead, it prompts us to reaffirm our holding in *Miener*: money damages are available under § 504. See *Waldrop v. Southern Co. Services, Inc.*, 24 F.3d 152, 156–57 (11th Cir.1994) (Section 504 provides for the full spectrum of remedies); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 829–32 (4th Cir.1994) (same).

For these reasons, we reverse the grant of summary judgment and remand for further proceedings. This decision does not address whether Rodgers will be able to prove that she is indeed entitled to any relief. She must still prove that she had a disability, that she was otherwise qualified[3] to perform the job she was denied, that the denial was because of her disability, and that she actually incurred compensable damages. We leave those issues for the District Court.

It is so ordered.

HARRY W. WELLFORD, Senior Circuit Judge, concurring.

I agree with the thoughtful opinion of Chief Judge Arnold that we must reverse the decision of the district court as a matter of law to hold that a § 504 (29 U.S.C. § 794) cause of action may include a claim for legal damages.

I believe, however, that we should review further plaintiff's complaint to determine the issues to be remanded in light of the record in this case. The district court concluded that plaintiff made "no claim for back pay, because [among other reasons] the plaintiff

remained employed throughout the time she was allegedly discriminated against." There is, however, a claim for damages which must be considered. The district court may also have been in error in foreclosing a 42 U.S.C. § 1983 cause of action despite the fact that the § 1983 claim is somewhat parallel and analogous and damages sought thereunder may duplicate the asserted § 504 claimed damages. *See Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

Plaintiff concedes in her complaint, as she must in claiming to be handicapped, that without medical treatment for a number of months that her behavior as "an elementary counselor" and "instructor" displayed, among other symptoms, "extreme irritability, hostility, aggressiveness, poor judgment and reckless behavior." By mid-April of 1990, towards the end of the school year, her physician opined that he had diagnosed "bipolar manic illness;" that she had "obtained substantial relief from these symptoms;" and that in the future, with treatment, "she should be able to perform her job duties."[4] Plaintiff, furthermore, concedes that "during this period another teacher would report various conduct of Carolyn Rodgers to the superintendent" which she described as "bizarre" or "crazy."

This condition was described in *White v. Holmes, et al.*, 21 F.3d 277 (8th Cir.1994), as a "manic depressive illness, characterized by symptoms that include mood swings and impulsive behavior." *Id.* at 279, n. 1. In *White*, a plaintiff prisoner, injured by a fe-

---

**3.** The District Court's order states that it does not believe the plaintiff could meet the "otherwise qualified" element of proof under Section 504. This determination is one for the District Court to make in the first instance; however, Rodgers need prove only that she was qualified at the time she was denied the job, not that she is qualified at this time.

**4.** This prognosis assumed that Rodgers would regularly continue her treatment despite her proclivity to act "inappropriately." We do not know

what "substantial relief" may be in relation to reckless and hostile conduct with an aggressive disorder with one who is dealing with a group or groups of young elementary students. A reasonable school board might well be concerned about its own liability under these circumstances to an abused or mistreated child or the parents or guardians if it continued Rodgers' employment with these potential risks without some medical assurance that the condition might not suddenly reoccur.

male prison librarian with this disorder or illness, sued prison authorities for a sudden violent attack because this person became upset because she could not open a door. This condition, in my view, if not subject to continuing control in the future as a matter of reasonable medical certainty, would cast doubt on plaintiff's ability to serve as an elementary teacher and counselor. There is also the ongoing question of reasonable accommodation.

Plaintiff attaches to her complaint the response of Magnet Cove Public Schools (Magnet Cover) at the end of April, 1990. This letter (Plaintiff's Exhibit C) sets out not only the serious problems exhibited by plaintiff as a counselor and instructor above described, but also (1) failure to coordinate student activities in several respects and (2) "failure to complete the six (6) hours" required for the 1989–1990 school year which had to be "corrected by the start of the 90–91 year." These latter two specified deficiencies may or may not have been related to plaintiff's claimed disability.

In any event, plaintiff submitted a subsequent June 13, 1990 letter to Magnet Cove requesting a "medical leave of absence ... for the 1990–91 school year," and acknowledging that Magnet Cove would "require a medical release upon [her] return to teaching and other duties." She ended the letter by stating: "Your consideration has been greatly appreciated." Plaintiff's Exhibit D. Plaintiff averred her inability to work in May of 1990 because Magnet Cove had responded as above set out. She conceded abortive negotiations with Magnet Cove concerning her medical leave of absence because Magnet Cove wanted a competent physician's medical opinion that her "medical problems had been alleviated and were unlikely to reoccur."

Plaintiff's Exhibit G also indicated that in May of 1990 "there was an oral agreement between the parties to grant [Rodgers] a medical leave of absence in lieu of the recommended nonrenewal. Therefore, nonrenewal of your contract was set aside and not acted upon by the [Magnet Cove] board." (This was "in lieu of the contract nonrenewal and/or a hearing.") Plaintiff conceded, according to her Exhibit G, that a number of

accommodations were granted to Rodgers during the 1989–90 school year by Magnet Cove.

The complaint also avers that Rodgers, prior to the beginning of the 1990–91 school year, entered into a contract with defendant Benton School District ("Benton") to perform teaching services, and she began work in August of 1990 without notifying Benton of her handicap. When she later informed Benton of her condition, she stated she would be in need of modest accommodations." Thereafter, she was terminated by Benton for failing to set out the nature and extent of her handicapped condition and the need for special accommodation. Rodgers contested this action including an appeal to state court, but dismissed her case because "plaintiff's condition has increased" so that by November, 1990, she was "unable to work as a teacher." In conflict with this assertion, however, was her next averment that "she was able to obtain employment from defendant Little Rock School District [LRSD] which commenced October 1, 1990." This time plaintiff apparently notified LRSD of her handicap and requested various accommodations. Despite continuing disagreements about accommodations, Rodgers completed the 1990–91 school year at a salary apparently as high or higher than she would have earned at Magnet Cove or Benton.

This recitation from the record persuades me that the district court was not in error in concluding, *at least through the 1990–91 school year,* that the plaintiff suffered no damages. It was apparent that prior actions of Magnet Cove and Benton had not, in fact, precluded or adversely affected her ability to teach through the 1990–91 school year. Her claims for damages, if any, should commence only with the beginning of the 1991–92 school year, in my view.

I believe that a school district, seeking a qualified kindergarten or elementary teacher, may properly require a candidate with bipolar manic disease to submit a medical evaluation indicating that such disease is alleviated or under control and whether its symptoms are likely to reoccur or the condition deteriorate during the ongoing school

year. This bears upon one's qualification to teach/counsel young students.

I concur with the majority decision, but would, as indicated, limit the basis of plaintiff's claims for the reasons indicated in this record.