# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1163

_____

| | | |
|---|---|---|
| Mary Ellen Liebe, Special Administrator of the Estate of Robert W. Liebe, Deceased, and Mary Ellen Liebe, Guardian of the Estate of Marcus Liebe, a minor child, | * * * * * * * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District of |
| Lyle Norton, individually and as | * | South Dakota. |
| an employee of Fall River County; | * | |
| Fall River County, South Dakota; | * | |
| and Gene Linehan, as Sheriff of | * | |
| Fall River County, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 12, 1998
Filed: October 1, 1998

_____

Before BOWMAN, Chief Judge, LOKEN, Circuit Judge and MAGNUSON,[1] District
Judge.

_____

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for
the District of Minnesota, sitting by designation.

1

MAGNUSON, District Judge.

Mary Ellen Liebe, the Special Administrator of the Estate of Robert W. Liebe and Guardian of the Estate of Marcus Liebe, appeals from the judgment of the district court[2] dismissing Appellant's claims against Appellee Lyle Norton and granting summary judgment in favor of Appellees Fall River County, South Dakota and Gene Linehan, Sheriff of Fall River County. On October 12, 1993, Robert W. Liebe committed suicide while incarcerated at the Fall River County Jail. Mary Ellen Liebe, Robert's wife, sought damages against Defendants-Appellees under 42 U.S.C. § 1983. The district court dismissed the claims against Lyle Norton based on qualified immunity, and granted summary judgment as to the remaining Defendants-Appellees because Appellant was unable to show that Fall River County failed to train Lyle Norton. We affirm.

## I.

On October 12, 1993, Robert Liebe was arrested and taken to the Fall River County Jail. Liebe was intoxicated at the time of his booking. In accordance with County policy, Lyle Norton processed Liebe into the jail, and after questioning Liebe, classified him as a "SUICIDE RISK." Liebe had admitted to previously attempting suicide, and was on both clonazepam and valium. Although Liebe had previously been

---

[2]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

a prisoner at the jail, Norton did not research the prior file to learn additional information about Liebe. After removing Liebe's shoes and belt, Norton placed Liebe in a temporary holding cell designed to minimize the risk of harm to the inmate. The Fall River County Manual of Policies, Procedures and Operations (the "MPPO") recommends checking on inmates such as Liebe every fifteen (15) minutes. Thus, from 4:30 p.m. until 8:50 p.m. on October 12, 1993, Norton checked on Liebe approximately seventeen (17) times. The time lapse between these checks varied from seven (7) minutes to twenty-one (21) minutes. However, Norton did not turn on the audio system to the temporary holding cell.

At 8:50 p.m., twenty (20) minutes after the last check on Liebe, Norton found Liebe hanging in his cell. Liebe had used his long-sleeved shirt to hang himself on a metal-framed electrical conduit in the temporary holding cell. Despite the fact that Norton had the keys to Liebe's cell in his pocket, Norton ran back to the dispatch area to trip an electronic switch to open the cell door. While at the dispatch area, Norton told the dispatcher to call an ambulance. The dispatcher also dispatched other deputies to Liebe's cell. According to the dispatch log, Liebe was discovered hanging at 2057 hours, and CPR was not initiated until 2112 hours, a period of fifteen (15) minutes.

Norton returned to Liebe's cell and assisted a Hot Springs police officer in cutting Liebe down and lowering his body to the floor. Norton could feel that Liebe's hands were cold and see that his lips were blue. The Hot Springs officer could not find

3

a pulse on Liebe. When the ambulance arrived, Liebe failed to respond to resuscitation efforts, and he was pronounced dead upon his arrival at the hospital. Prior to this incident, there had never been a suicide at the Fall River County Jail.

Norton began working part-time at the Fall River County Jail on August 17, 1993. Before beginning duties as a solo jailer, he was given on-the-job training for two and one-half weeks by another jailer. Norton was also scheduled to attend a jailer training course, but the course was not being held until November 1993. However, Norton had begun a Jail Officers Training Correspondence Course. Norton had received CPR training in 1992 and was recertified twice as a reserve officer. Thus, prior to Liebe's suicide, Norton had worked as a full-time jailer for approximately two months. Norton was also given the MPPO to read, but Sheriff Bray, Norton's superior, never told Norton that he was required to know or understand the MPPO's contents.

Mary Ellen Liebe, as administrator of Liebe's estate, filed suit against Norton, the Sheriff, and the County. The District Court for the District of South Dakota held that Norton was entitled to qualified immunity. Further, the Court granted summary judgment as to the remaining defendants. Mary Ellen Liebe appeals both of these decisions.

## II.

### A. Qualified Immunity

We review qualified immunity, a question of law, de novo. See Jackson v.

4

Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To withstand the application of qualified immunity, a plaintiff must assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right. Id. (citing Foulks v. Cole County, Mo., 991 F.2d 454, 456 (8th Cir. 1993)).

Norton concedes that the first prong of this test is satisfied. The Complaint clearly alleges violations of Liebe's constitutional rights. These rights include Liebe's right to be free from cruel and unusual punishment and his right to not be deprived of life, liberty, or the pursuit of happiness without due process of law.

As for the second prong, Appellant contends, and the district court agreed, that the law was clearly established on October 12,1993. However, Norton argues that, in a § 1983 action, "clearly established" takes on a somewhat different meaning. According to Norton, although Liebe had a clearly established right to be free from cruel and unusual punishment, the law was not clearly established regarding what measures must be taken to prevent inmate suicides. See Rellergert v. Cape Girardeau

5

County, Mo., 924 F.2d 794 (8th Cir. 1991). However, this argument seems more appropriately waged with regard to the third prong of qualified immunity, regarding whether Norton should have known that his actions violated Liebe's constitutional rights. The Supreme Court has held that prison inmates have a constitutional right, under the Eighth Amendment, to have serious medical needs addressed. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). Norton cannot seriously argue that Liebe does not possess such a right. Moreover, once one is classified as a suicide risk, the right to be protected from that risk would seem to fall under the ambit of the right to have medical needs addressed. Further, any argument Norton may have under Rellergert, regarding the precautions that must be taken, would require a factual inquiry. The Rellergert holding did not question whether inmates have a right to be protected when they pose a serious suicide risk. Instead, it merely questioned the length to which prison officials must go to prevent that suicide. Rellergert, 924 F.2d at 796. Therefore, we hold that the second prong of qualified immunity is met because Liebe had a constitutional right to be protected from the known risks of suicide.

It is the third prong of the qualified immunity test which is the crux of this appeal. This prong, regarding whether a reasonable official would have known that his conduct violated a constitutional right, involves both an objective and subjective component. See Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996). The objective component examines whether a serious deprivation occurred. See id. The subjective

6

component examine's Norton's state of mind, and requires that he acted with "deliberate indifference." Id. The district court held that this prong was not met because Norton's actions did not amount to deliberate indifference. We agree.

Norton cannot be found guilty of deliberate indifference unless it is shown that he "[knew] of and disregard[ed] an excessive risk to [Liebe's] health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). By classifying Liebe as a suicide risk on the prison intake form, Norton demonstrated that he was aware of a potential risk to Liebe's health or safety. However, Norton may still escape liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

In Rellergert, we stated that "[d]eliberate indifference 'is a difficult burden for a plaintiff to meet and becomes the key issue.'" 924 F.2d at 796 (quoting Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990)). Additionally, even though we admitted that "we cannot say that the law is established with any clarity as to what . . . measures must be" taken to prevent inmate suicides, we did find that a prison institution's policy of housing suicide inmates in a common area represented "affirmative and deliberate steps to prevent suicides." Id. at 797. Moreover, we noted that the policy "could not have been both deliberately cautious about [an inmate's] risk as a suicide and deliberately indifferent about it." Id. Finally, we noted that the fact that a suicide occurred does not answer the relevant question: Were the preventive

7

measures taken "so inadequate as to be deliberately indifferent to the risk"? Id. Thus, even though the prison official's conduct may have amounted to negligence, we could not conclude as a matter of law that he acted with deliberate indifference. See id. at 797-98.

The facts of this case are strikingly similar to those in Rellergert. In both cases, the prisons had policies in place for the protection of inmates classified as suicide risks. Tragically, in both cases, despite those preventive policies, inmates were successful in committing suicide. Appellant asserts that the present case is somehow different because of the lack of in-depth training provided to Norton, and Norton's supposed awareness of the inadequacy of that training. Specifically, Appellant points to Norton's awareness that Liebe was taking medications for depression and an anxiety disorder, and Norton's admission that he was not sure what those disorders entailed. Additionally, Appellant proffers Norton's failure to immediately administer CPR to Liebe as evidence of his indifference. All of these facts, Appellant asserts, amount to deliberate indifference.

Appellant contends that the district court erred in focusing on the efforts which Norton undertook. Instead, Appellant points to all of the actions which Norton should have taken. Unfortunately, Norton did not have the benefit of twenty-twenty hindsight, as we do now. Thus, we must examine those precautionary actions which were undertaken. Appellant seems to ignore the fact that Norton did classify Liebe as a

8

suicide risk, and he did take the preventive measures of placing him in the temporary holding cell and removing his shoes and belt. Additionally, Norton periodically checked on Liebe. While Norton may have been negligent in not checking on Liebe more often, or in failing to notice the exposed electrical conduit in the temporary holding cell, we cannot say as a matter of law that his actions were indifferent. To the contrary, Norton's actions constituted affirmative, deliberate steps to prevent Liebe's suicide. Despite Norton's ultimate failure to prevent that suicide, Norton did not act with deliberate indifference. Accordingly, Appellant fails to meet her burden, and Norton is entitled to qualified immunity.

### B. Summary Judgment

Appellant also appeals the district court's grant of summary judgment in favor of Fall River County and Sheriff Linehan. We review a grant of summary judgment de novo. See Olinger v. Larson, 134 F.3d 1362, 1365-66 (8th Cir. 1998) (citing Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996)). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The court determines materiality from the substantive law governing the claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over facts that might affect the outcome of the lawsuit according to

9

applicable substantive law are material.  See id.  A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party.  See id. at 248-49.

Because Appellant's suit against Sheriff Gene Linehan is against Linehan in his official capacity, it must be treated as a suit against the County.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  Thus, the actions of the Sheriff will be deemed actions of the County.  Additionally, in a § 1983 action, a municipality may only be held liable for constitutional deprivations if the deprivation is the result of a policy  or custom of the municipality.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Liebe asserts three claims against the Sheriff and the County:

1.    The failure of Fall River County to have appropriate policies in place to safeguard the constitutional rights of those with whom their employees may come into contact; and

2.    The failure of Fall River County to adequately train its jailers, and particularly Lyle Norton; and

3.    The failure of Fall River County to adequately supervise its jailer, Lyle Norton.

(Appellant's Br. at 34.)  According to Appellant, each of these claims provides a separate and distinct basis for the County's liability.  However, a close analysis of the first claim, regarding the adequacy of policies in place, reveals that it is subsumed by the failure to train claim.  For example, the policies which Liebe asserts the County should have had in place are policies involving the training and supervision of rookie

jailers. Thus, we will address only the failure to train claim and the failure to supervise claim.

Under Canton, a failure to train claim may only serve as a basis for § 1983 liability when the failure to train can be said to constitute deliberate indifference to the rights of others. See Canton, 480 U.S. at 388. Appellant contends that the County was deliberately indifferent when it left Norton, an inexperienced jailer, in charge of its jail facility. We have already discussed the standards for finding deliberate indifference and, in doing so, have recognized that the County did have policies in place which were intended to prevent inmate suicides. These policies included completing a questionnaire for new inmates to determine if they posed a suicide risk, placing those inmates who are deemed suicide risks in a temporary holding cell, removing clothing and accessories from such inmates which could be used to aid in a suicide, and checking the temporary holding cell every fifteen (15) minutes. The existence of these policies indicate that the County was interested in preventing inmate suicides and, in fact, took affirmative steps to prevent such suicides. In addition, similar to the policy in Rellergert, the County's policy cannot be both an effort to prevent suicides and, at the same time, deliberately indifferent to suicides. See Rellergert, 924 F.2d at 797.

Moreover, the fact that Norton was not led, step by step, through the policies contained in the MPPO does not necessarily amount to a failure to train. Norton was given the MPPO, and he was scheduled to attend a jailer training course. Considering

11

the fact that the above policies were in place, and that no inmate suicides had ever occurred at the jail, we cannot say that "the need for more or different training [was] so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the [County] . . . can reasonably be said to have been deliberately indifferent." Canton, 489 U.S. at 390. Appellant failed to set forth a genuine issue of material fact as to whether Norton or the County's policies showed deliberate indifference. Accordingly, the district court did not err in granting summary judgment on Appellant's failure to train claim.

Appellant next asserts that the failure to supervise claim is distinct and separate from the failure to train claim. However, both claims ultimately require the same analysis. First, a supervisor cannot be held vicariously liable under § 1983 for an employee's actions. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). Second, in White, we held that a failure to supervise claim "'may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts.'" Id. (quoting Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir. 1989)). Thus, as with the failure to train claim, this claim is governed by the deliberate indifference standard.

As evidence of deliberate indifference, Appellant offers Norton's on-the-job training, in which checks of the temporary holding cell often exceeded fifteen minute intervals. Additionally, Appellant points to the County's failure to test Norton on his

12

knowledge of the MPPO, and County's decision to leave Norton in charge of the jail. However, if these actions do not constitute deliberate indifference for a failure to train claim, they cannot constitute deliberate indifference in the present failure to supervise claim. Moreover, Appellant's focus on the County's lack of corrective actions after the suicide misses the mark. Any failure to act occurring after the date of the suicide does not show that the County was deliberately indifferent to the risk of a suicide on October 12, 1993, nor does it show that the County tacitly authorized any unconstitutional conduct. As has already been fully discussed supra, Appellant has not presented this Court with any material issues of fact regarding the County's deliberate indifference. Rather, the facts show the opposite: that the County had policies and procedures in place to prevent inmate suicides. These deliberate steps taken to prevent inmate suicides necessitate that we affirm the district court's grant of summary judgment in favor of the County and Sheriff Linehan.

## C. Conclusion

In summary, we affirm the district court's dismissal of Appellant's claims against Norton because he is entitled to qualified immunity. Further, we affirm the district court's grant of summary judgment in favor of Fall River County and Sheriff Linehan because Appellant failed to place any genuine issues of material fact in dispute as to whether the County was deliberately indifferent.

13

A true copy.


ATTEST:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.