# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2932

_____

Terri Meagley,

    Plaintiff - Appellant,

v.

City of Little Rock,

    Defendant - Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Eastern
\*  District of Arkansas.
\*
\*
\*
\*

_____

Submitted:  April 14, 2011
Filed: May 2, 2011

_____

Before LOKEN and MURPHY, Circuit Judges, and JARVEY[1], District Judge.

_____

MURPHY, Circuit Judge.

After Terri Meagley was injured at the Little Rock Zoo when her rental scooter tipped over on an incline, she sued the City of Little Rock under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act).  The case was tried to the district court[2] which ruled in

_____

[1] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

[2] The Honorable D. Price Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

favor of the City, holding that Meagley could not recover under the ADA or the Rehabilitation Act because she had not shown intentional discrimination, that the scooter rental fee was not an illegal surcharge, and that Meagley lacked standing to challenge a liability waiver the zoo subsequently imposed for scooter rentals. Meagley challenges all three rulings in her appeal. We affirm.

I.

We review the district court's factual findings for clear error and its conclusions of law de novo. Winters v. Ark. Dep't of Health & Human Servs., 491 F.3d 933, 934 (8th Cir. 2007). The district court made detailed factual findings which neither party disputes.

On June 17, 2007, Terri Meagley visited the Little Rock Zoo with her daughter, son in law, and grandchildren. Meagley weighed about three hundred pounds and had difficulty walking long distances. An electric scooter was rented from the zoo to help her navigate the exhibits. The rental cost was $20 for two hours and $5 for each additional hour. As Meagley was starting over a foot bridge near the Siamang Exhibit, her scooter tipped over. An ambulance took her to a local hospital where she was examined for injuries to her back, hips, and ribs. She was released from the hospital a few hours later.

At the time of Meagley's accident, the zoo's standard practice with regard to scooter rentals was to have a guest services representative explain how to use one. This explanation included a warning to slow down when traveling over inclines and to notice where scooter use was prohibited. The renter was also told to read the scooter's operating instructions. No zoo employee testified at trial that Meagley or her son in law was provided with the scooter's operating instructions or the warning to slow down when traveling over inclines. No scooter had ever overturned on the bridge before Meagley's accident.

Within days after Meagley's accident, zoo personnel blocked off the bridge where her accident had occurred and posted signs warning against using scooters on the bridge. About a year later, Meagley filed a complaint with the U.S. Department of the Interior (DOI) alleging that the zoo was not accessible to disabled people because of architectural barriers. The DOI ordered the zoo to conduct a self evaluation, which led to findings that the bridges near the Siamang Exhibit needed to be replaced because their slopes were too steep. Meagley's accident had occurred on one of those bridges, and its slope was in excess of the limit listed in ADA guidelines. These bridges had nevertheless not been listed in a transition plan which had been agreed on earlier by a class of disabled plaintiffs and the zoo and then incorporated into a judgment in 2000.[3]

The zoo made all of the corrections listed in the self evaluation report. In particular, it rebuilt the two bridges near the Siamang Exhibit to be "essentially level." Work was completed in May 2009. In June 2009, the DOI concluded that the zoo's scooters were safe and that its reconstruction of the bridges in question eliminated any safety concerns. Sometime after Meagley's accident, the zoo began requiring scooter renters to sign a release waiving tort claims. This waiver did not cover ADA or Rehabilitation Act claims.

Meagley brought her complaint in March 2009. The district court found that the zoo had violated the ADA and the Rehabilitation Act by maintaining bridges with steeper slopes than permitted in the relevant regulations. It entered judgment for the City, however. The court ruled that Meagley had not provided proof of intentional discrimination which was required to obtain compensatory damages and that her claim for injunctive relief was moot. The district court also held that the zoo's rental fee was not an illegal surcharge and that Meagley lacked Article III standing to

---

[3] Coates v. City of Little Rock, No. 95-cv-00302 (E.D. Ark. Aug. 14, 2000).

challenge the liability waiver the zoo implemented after her accident. She now objects to these rulings.

## II.

Meagley first argues that the district court erred by ruling that she had failed to prove that the City acted with deliberate indifference. This purely legal issue, whether Meagley must prove deliberate indifference to recover compensatory damages on her ADA and Rehabilitation Act claims, is reviewed de novo. See Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co., 48 F.3d 365, 369 (8th Cir.), cert. denied, 516 U.S. 913 (1995). We review any factual determinations in this analysis for clear error. Id.

The district court held that while money damages are available in "ADA/ Rehabilitation Act cases," see Rodgers v. Magnet Cove Pub. Schs., 34 F.3d 642, 644–45 (8th Cir. 1994), "discriminatory intent is required" before a plaintiff may recover compensatory damages for an ADA or Rehabilitation Act violation. Although that question was still undecided by the Eighth Circuit, the district court noted that "every other Circuit Court that [had] addressed the issue" holds that discriminatory intent is required. See Meagley v. City of Little Rock, No. 4:09-cv-226-DPM, 2010 WL 3219327, at *4 (E.D. Ark. Aug. 13, 2010), and cases cited.

The district court reasoned as follows. A plaintiff's rights and remedies under the ADA "are the same as under section 504." Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998). Section 504 expressly adopted the same "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964." See 29 U.S.C. § 794a(a)(2). Under applicable Title VI precedent, proof of discriminatory intent is required before compensatory damages may be recovered. See Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 607 n.27 (1983) (opinion of White, J.); Alexander v. Sandoval, 532 U.S. 275, 282–83 (2001). The district court concluded from this

analysis that deliberate indifference was the appropriate standard for intentional discrimination in this case. And since Meagley had failed to prove that the zoo knew the bridge was not compliant with ADA regulations, she could not recover compensatory damages.

On appeal, Meagley argues that we have never imposed a "heightened showing" on ADA or Rehabilitation Act plaintiffs seeking compensatory damages. She cites, among others, our decisions in Miener v. Missouri, 673 F.2d 969 (8th Cir. 1982), Rodgers v. Magnet Cove Public Schools, 34 F.3d 642 (8th Cir. 1994), and Randolph v. Rodgers, 170 F.3d 850 (8th Cir. 1999). In particular, Meagley asserts that Randolph implicitly rejected the argument for a "heightened standard."

None of the cases Meagley cites stands for the proposition that ADA or Rehabilitation Act plaintiffs may recover compensatory damages without showing intentional discrimination. Miener merely held that there was an implied private right of action under Section 504 and that "damages are available under § 504" to remedy discrimination against handicapped individuals. See 673 F.2d at 973–75, 979. Miener did not address the quantum of proof necessary to recover compensatory damages. See id. at 973–75. Similarly, Rodgers "reaffirm[ed] our holding in Miener [that] money damages are available under § 504" but it did not address the standard for recovering compensatory damages. 34 F.3d at 645. And, contrary to Meagley's assertion, Randolph did not even address compensatory damages. In that case we considered whether a district court abused its discretion by granting a permanent injunction for alleged ADA and Rehabilitation Act violations. See 170 F.3d at 857–59. Meagley's authorities are therefore inapposite.

As the district court noted, our circuit has not yet squarely addressed whether ADA and Rehabilitation Act plaintiffs must prove intentional discrimination to recover compensatory damages. Meagley argues that she "can obtain compensatory

-5-

damages in the absence of discriminatory intent" and that there is "no additional showing necessary" under applicable precedents.

We disagree. All circuits to decide the question have held that to recover compensatory damages under either the ADA or the Rehabilitation Act, a plaintiff must establish that the agency's discrimination was intentional.[4] Several other circuits, while not expressly deciding the question, have suggested or implied the same.[5] And they have all done so for good reason.

The ADA was modeled on the Rehabilitation Act, which had been modeled after Title VI, so it follows rationally that the rights and remedies afforded under both statutes should be governed by Title VI precedent. See 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 12133. Moreover, the Supreme Court held in Guardians Ass'n v. Civil Service Commission, (an otherwise divided decision) that "no compensatory relief should be awarded [in Title VI cases] if discriminatory animus is not shown." 463 U.S. at 607 n.27 (opinion of White, J.); see also Alexander, 532 U.S. at 282–83 ("In Guardians, the Court *held* that private individuals could not recover compensatory damages under Title VI except for intentional discrimination."). Meagley's claims

---

[4] See Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009) (Rehabilitation Act); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 & n.20 (1st Cir. 2003) (ADA and Rehabilitation Act); Delano-Pyle v. Victoria County, 302 F.3d 567, 574 (5th Cir. 2002), cert. denied, 540 U.S. 810 (2003) (same); Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 115 (2d Cir. 2001) (same); Duvall v. County of Kitsap, 260 F.3d 1124, 1138 & n.12 (9th Cir. 2001) (same); Pandazides v. Va. Bd. of Educ., 13 F.3d 823, 830 & n.9 (4th Cir. 1994) (Rehabilitation Act); Wood v. President & Trs. of Spring Hill Coll., 978 F.2d 1214, 1219–20 (11th Cir. 1992) (same).

[5] See Douris v. Office of Pa. Att'y Gen., 174 F. App'x 691, 693 (3d Cir. 2006); Love v. Westville Corr. Ctr., 103 F.3d 558, 561 (7th Cir. 1996); Moreno v. Consol. Rail Corp., 99 F.3d 782, 791 (6th Cir. 1996) (en banc).

under both the ADA and Rehabilitation Act thus require proof of discriminatory intent to recover compensatory damages.

The district court decided that deliberate indifference was the appropriate standard for showing intentional discrimination in this type of case. A number of other circuits have so ruled, and we agree. See, e.g., Barber, 562 F.3d at 1228–29; Garcia, 280 F.3d at 115. The deliberate indifference standard, unlike some tests for intentional discrimination, "does not require a showing of personal ill will or animosity toward the disabled person," but rather can be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." Barber, 562 F.3d at 1228–29. Under that standard Meagley must show that the City of Little Rock was deliberately indifferent to the rights secured to her by the ADA and Rehabilitation Act in order to recover compensatory damages.

Meagley failed to satisfy this standard. As the district court explained, there is no evidence that the zoo knew the bridges near the Siamang Exhibit did not comply with ADA guidelines. Before Meagley's accident, no zoo patron had ever turned over in a scooter on that bridge. An evaluation performed for the transition plan in an earlier case failed to note any ADA compliance problems with the bridges. The zoo blocked off the bridges immediately after her accident and altered them to lie "essentially flat." Though Meagley argues that the zoo's continued failure to "mark the accessible path" of travel for scooters amounts to violations of both statutes, she cannot point to any record evidence or authority to support her conclusion.

Meagley also contends that the Supreme Court decision in Barnes v. Gorman essentially altered the landscape of discrimination law. She claims that under Barnes, "deliberate indifference is not a required element in order for an individual in a private action to collect compensatory damages." To her, Barnes stands for the proposition that an individual "need only show that a recipient of federal funds was

on notice that it was subject to the judicial remedies relevant to the particular legislation at issue." She contends that had the district court applied that standard, the only remaining question would be the amount of compensatory damages due her.

Barnes focused, however, on "whether punitive damages may be awarded" under the ADA or the Rehabilitation Act. 536 U.S. 181, 183 (2002). Because punitive damages were not expressly authorized by either statute or Title VI and were not the sort of remedy "traditionally available" for breach of contract, the Supreme Court held that punitive damages "may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act." Id. at 189. Contrary to Meagley's assertion, the Court did not rule that compensatory damages under the ADA or Rehabilitation Act could be obtained without a showing of intentional discrimination.[6] Every circuit court to address the issue since Barnes has reaffirmed that intentional discrimination must be shown to recover compensatory damages.

Since Meagley has failed to show intentional discrimination through proof of deliberate indifference or otherwise, she may not recover compensatory damages. The district court did not err in so holding.

II.

Meagley also contends that the rental fee charged by the zoo for the scooter was an impermissible surcharge under applicable ADA regulations. This claim first

---

[6] Despite their knowledge of an arrestee's paraplegia and over his objections, the Barnes police officers had removed him from his wheelchair, strapped him to a narrow bench in the back of their van, and denied him permission to empty a urine bag attached to his waist. See Barnes, 536 U.S. at 183. After the arrestee fell to the floor of the van and his urine bag ruptured, the driver fastened him to a support for the remainder of the trip. Id. A jury awarded him over $1 million to compensate him for the injuries. That award was not challenged in the Supreme Court.

-8-

arose at trial, and the district court allowed Meagley to amend her complaint to add it. After trial, the court concluded that the zoo's scooter rental program went "above and beyond" its general obligation under the ADA to make its services, programs, and activities accessible to disabled patrons. Because the zoo made scooters available to all of its patrons, charged the fee to everyone who rented the scooter, and did not require disabled visitors to rent scooters, the court concluded that the "Zoo's fee for renting a scooter is not an illegal surcharge."

Appellant's argument that the zoo's scooter rental fee is an impermissible surcharge is based on 28 C.F.R. § 35.130(f). That regulation prohibits placing a surcharge on individuals with disabilities to cover the costs of measures "that are required to provide" those individuals with nondiscriminatory treatment under the ADA. Meagley asserts that because the zoo is "obviously a large place that requires the ability to move," the scooters were mobility aids necessary for program access.

The record here makes clear that the zoo's scooter rental service was not intended to meet ADA requirements, but was merely a convenience for all zoo visitors. Moreover, disabled patrons were permitted to bring their own scooters or other mobility devices to the zoo to use without charge. We agree with the district court that the surcharge was not illegal because the zoo was not "required" to provide scooters to disabled zoo visitors.

III.

Finally, Meagley argues that the district court erred in concluding that she lacked standing to challenge the zoo's liability waiver imposed after her accident. The district court's conclusion that she lacked standing to bring this claim is reviewed de novo. See, e.g., Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000). The district court held that Meagley failed to establish an "injury in fact" because (i) Meagley was not required to sign a liability waiver; (ii) the zoo started using these

forms after her accident; and (iii) Meagley did not testify or otherwise aver that she intends to return to the zoo. And even if she had so testified, the mere "[i]ntent to return to the place of injury 'some day' is insufficient" according to the district court. Steger, 228 F.3d at 893, quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992).

Meagley continues to argue that since she "obviously suffered an injury and has indicated a desire to return to Little Rock," she has standing to challenge the waiver of tort liability the zoo imposed after her injury. The zoo responds by noting that Meagley must show that she is "likely to suffer some future injury" to obtain injunctive relief and that because she "never indicated that she would return to the Zoo," she "cannot establish a real and immediate threat as required for standing." We agree. Like some of the parties in Steger, Meagley has failed to show that she is "likel[y] to visit the [zoo] in the imminent future." 228 F.3d at 893. She has failed to show an adequate injury in fact, and accordingly lacks standing to challenge the waiver of tort liability the zoo enacted after her injury.

IV.

For these reasons the judgment of the district court is affirmed.

_____